## CHAPMAN *vs.* THE ALBANY AND SCHENECTADY RAILROAD COMPANY.

A railroad corporation, constructing its road through one of the streets of a city, in pursuance of authority granted by the legislature, and with the consent of the common council of the city, is not liable for *consequential damages* sustained by persons owning land adjacent to the street, by reason of the raising of the grade of the street; provided the authority given to the company is exercised with proper care and skill.

The use to which a street in a city or village is devoted, is far more extensive than the mere right of the public to pass over it. It may be used in any way which shall best promote the interests and business of the city or village where it is located. What will so promote those interests and that business, is to be determined by the municipal authority to whom the control of the streets is committed.

Those who purchase lands adjacent to such streets, must be deemed to take their title subject to the appropriation of the streets to such purposes and objects as the public interests shall require.

The only restriction upon this appropriation is, that the use to be made of the streets, must not be incompatible with the ends for which they were established.

A statute relating to the city of Albany, required the common council, when it should alter the grade of any street, to appoint three persons to assess the damages, &c. to which any owners of lots might be subjected, by reason of such alteration; and provision was made for the payment of such damages. The grade of a street having been altered by a railroad company, with the consent of the common council, and the damages caused by such alteration having been assessed, and the assessment confirmed; *Held*, that it was a legal presumption, that the owners of lots affected by the alteration had been satisfied for all the injuries sustained in consequence of the alteration of the grade; and that an action against the railroad company, to recover such damages, could not be sustained.

THIS was an action on the case to recover damages for injuries sustained by the plaintiff, in consequence of the construction of the defendants' railroad across Broadway, in the city of Albany, near the plaintiff's premises. The action was tried at the Albany circuit in July, 1848, before Mr. Justice Hand. It

appeared upon the trial, that in 1844 the defendants, in pursuance of authority granted by the legislature, and with the consent of the common council of Albany, constructed their railroad across Broadway, entering that street upon the easterly side, at a point nearly opposite to the premises of the plaintiff, situate on the westerly side, and crossing the street diagonally to a point north of the plaintiff's premises. The grade of the railroad where it crosses Broadway, is two feet above the former grade of the street. On the 7th of October, 1844, the common council of Albany passed an ordinance, directing that the grade of Broadway, at its intersection with the railroad, be altered, so as to form on the north side of the railroad, a plane from the level of said railroad, regularly descending to Dewitt-street, and on the south side of said road, a plane, descending in like manner, to or near a point in Broadway opposite to premises of S. P. Jermain. Under this ordinance, the grade of the street was raised two feet opposite the plaintiff's north line, and one foot nine inches opposite his south line. On the 25th of November, 1844, the common council passed a law to apportion the damages caused by the alteration of the level of Broadway, and on the 25th of August, 1845, the apportionment so made was confirmed. The plaintiff gave some evidence tending to show that his property had been somewhat injured by the change in the grade.

The judge charged the jury, that the defendants were authorized by the acts of the legislature and the corporation of Albany, to construct their road upon the route adopted by them ; that the plaintiff, *prima facie,* was to be deemed to be the owner to the center of the street opposite his land, and, as such, could, in a proper action, sue any one for disturbing the soil of the street, except for the purposes of a street or highway ; that the defendants could not convert the soil of that part of the street belonging to the plaintiff to their own use, without compensation to him. But whether the soil of the street belonged to the plaintiff or not, he could recover for any particular damage sustained by him, in consequence of the defendants raising the street or the sidewalks opposite his premises, if that damage was special

Chapman *v.* Albany and Schenectady Railroad Co.

and peculiar to himself; that the defendants were liable in that case, if they raised the street, &c. themselves, or by their acts had rendered these alterations absolutely necessary, and the alterations were from necessity the direct consequence of the acts of the defendants ; that if the city corporation had been compelled to make the alterations in consequence of the defendants building their road across the street, and the plaintiff had sustained special injury thereby, he could recover of the defendants therefor ; that the city corporation had no right, without compensation, to injure the property of the plaintiff, to benefit the defendants. But if the injury sustained by the plaintiff was occasioned by the act of the city corporation, independently of the defendants, and by acts not attributable to a necessity occasioned by the acts of the defendants, for that the defendants were not liable. That the defendants had the right, by their charter, to use engines and cars upon their road, and, consequently, running them in a proper manner was not a nuisance, and the plaintiff could not recover for any injury sustained in consequence of the noise, &c. made by the defendants in the use of their road, unless damages had accrued to the plaintiff by some improper management thereof by the defendants. The jury found a verdict of $700 for the plaintiff.

*S. Stevens,* for the plaintiff.

*M. T. Reynolds,* for the defendants.

*By the Court,* HARRIS, J. The judge at the circuit was right, in holding that the defendants were authorized, by the acts of the legislature and the corporation of Albany, to construct their road across Broadway. Whatever may be the rule in respect to ordinary highways, it is certain that streets, within the limits of municipal corporations, are not exclusively to be devoted to the use of foot passengers and vehicles moved by animal power. This is, undoubtedly, their primary and principal, but it is by no means their only use. Sewers and drains may be constructed, and water-pipes and gas-pipes may be laid in

Chapman *v.* Albany and Schenectady Railroad Co.

them, with the consent, and under the control, of the municipal government. For such purposes, too—purposes in no way connected with their use by the traveling public—streets may be dug up; their grade may be changed; and the adjacent owners subjected to various and serious inconveniences. And yet, no one ever thought of maintaining an action for any consequential injury he may have sustained, as the result of such use of the street upon which his land happened to be bounded. The proposition of the learned judge, when he says that the plaintiff, as owner to the center of the street opposite his land, may maintain an action against any one for disturbing the soil of the street, except for the purposes of a street or highway, is quite too broad. The use to which a street in a city or village is devoted, is far more extensive than the mere right of the public to pass over it. It may be used in any way which shall best promote the interests and business of the city or village where it is located. What will so promote those interests and that business, is to be determined by the municipal authorities to whom the control of the streets is committed. If it ever was the rule, that streets could only be appropriated to the use of those who may have occasion to travel over them, either on foot or by means of animal power, it is very certain that the progress of improvements, and the exigencies of society, have left such a rule far behind. Those who purchase lands adjacent to such streets, must be deemed to take their title subject to their appropriation to such purposes and objects as the public interests shall require. The only restriction upon this appropriation is, that the use to be made of the streets must not be incompatible with the ends for which they were established.

In the *Lexington and Ohio Railroad* v. *Applegate*, (8 *Dana*, 289,) the question before the court was, whether the city government of Louisville had a right to authorize the location, construction and use of a railroad through a street of the city. Chief Justice Robertson, in delivering the judgment of the court of appeals, says: " The purchasers of property on Main-street, as on every other street, took their respective lots, subject to all the contingencies that might arise to it, and to the use of it,

from all the uses which might ever be made of the street as a public way, consistently with the objects of its original dedication. They purchased their property and must hold it,—as all others purchase and hold town lots—subject to any consequences that may result, whether advantageously or disadvantageously, from any public and authorized use of the streets, in any mode promotive of, and consistent with, the purposes of establishing them as common highways in towns, and compatible with the reasonable enjoyment of them by all others entitled thereto."

The same views have been expressed and maintained *at very great length*, by a very distinguished jurist in our own court. (*See Drake* v. *The Hudson River Railroad Co.* 7 *Barb.* 508.) "The streets wherein the tracks of the railroad are laid," says Judge Jones, "still continue streets, for the use, benefit and accommodation of the plaintiffs, and their fellow citizens, and the public at large. A leading use and purpose of a public street is, for travelers and others to pass and repass on and over the same, with horses, carriages, and other vehicles, and on foot. All parties must concur in that definition as applicable to the right of way over the public streets of the city. And does not the railroad, with its cars propelled by the application of steam, or by animal power, come equally within the definition, as the cart, carriage or omnibus, drawn by animals? It is a new mode of using the street, but it is still an use of it, for passing and repassing, with a vehicle for the carriage of passengers and goods and freight. And the use of the street by cars with passengers is equally in the exercise of the acknowledged right thus to traverse the street with carriages as the use of them by other vehicles for similar purposes." And in the same case, Edwards, J. says, "The use of a street for a railroad consists merely in adapting its surface to a particular mode of conveyance; and when so adapted, the running of a railroad car is no more an exclusive appropriation of the street, than the running of any other species of conveyance would be. If the additional facilities for passage and repassage, which a railroad furnishes, will have the effect of increasing the use of the street, and thus cause some inconvenience to persons doing business or residing in its neigh-

borhood, yet if it is not diverted from the purposes for which it was opened and laid out, no right of any person will be violated. Neither will there be any infringement of private rights, if the track itself should cause a slight change in the surface of the street, provided the passage is free and unobstructed."

In these general views, I understand the learned judge who tried this cause at the circuit, also to concur. Hence it is that we find him instructing the jury, not only that the defendants had the right to construct their road in the manner they did, but also that they might run engines and cars thereon without any liability for the injury the plaintiff might sustain, unless damages had accrued to him by some improper management of the defendants' road. But he also, in connection with these views, laid down a proposition which can not, I think, be sustained. He charged the jury, in substance, that if the defendants, by the construction of their road across Broadway, upon a grade different from that of the street, had rendered it absolutely necessary that the grade of the street should be changed, then they were liable for any special injury the plaintiff had sustained by means of such change. With great respect, I can not but regard this position as wholly untenable.

The defendants, it is conceded, did no unlawful act in constructing their road where, and in the manner, they did. If this was lawful, they have committed no wrong against the plaintiff by performing this lawful act. The city government have the right, it must also be conceded, to alter, at pleasure, the grade of any street. The motive which may have led to any such alteration is not the subject of inquiry, any more than the influences which may have led the legislature to pass the act which authorized the defendants to change the route of their road. It is enough that the common council, in making such alteration, has not exceeded the limits of its acknowledged jurisdiction.

Here then we have an act by the defendants, authorized by law, and performed in a lawful manner, and another act of the city government equally authorized and lawful, resulting in an injury to the plaintiff for which the defendants are made liable as wrongdoers. Such a state of things, all must agree, would

present a legal phenomenon hitherto unobserved. Nor is this all. By the 58th section of the act to combine into one the acts relating to the city of Albany, (*City Laws of Albany,* p. 67,) the common council is required, when it shall alter the grade of any street, to appoint three disinterested freeholders whose duty it shall be to inquire into and assess, the damages and recompense to which any owner of any lot may be entitled by reason of such alteration. Provision is also made for the payment of the damages so assessed. It appeared upon the trial, that in this case the provisions of the law had been complied with; that the damages caused by the alteration in the street had been assessed, and that the assessment had been confirmed. It is a legal presumption, therefore, that the plaintiff has been satisfied for all the injury he has sustained by reason of the alteration in the grade of the street. And yet, without reference to such legal compensation, he has been permitted to recover all these damages of the defendants in this action.

The counsel for the plaintiffs, upon the argument, relied very much upon the case of *Fletcher* v. *The Auburn and Syracuse Railroad Co.*, (25 *Wend.* 462.) That case has been regarded as standing upon somewhat questionable ground. (*See opinion of Bronson, Ch. J. in Radcliff* v. *The Mayor, &c. of Brooklyn, decided by the court of appeals in December,* 1850.) The case certainly goes much farther than any other with which I have met, towards sustaining the right of the owner of land adjacent to a street to maintain an action to recover damages for consequential injuries resulting from a lawful occupation of the street. Though the case does not seem to have been very maturely considered, I am inclined to think it was well decided. It came before the court upon demurrer. The plaintiff had alledged that the defendants had constructed across a certain street, adjacent to his messuage and garden, an embankment " by means whereof he can not have and enjoy his right of free and unobstructed passage unto and upon the street to and from his messuage and garden, and is deprived of the use, benefit and advantage of the street. And besides, his messuage is, by reason of the embankment, frequently inundated with water, insomuch

Chapman *v.* Albany and Schenectady Railroad Co.

that he is often deprived of the use and benefit of his cellar," &c. Admitting, by the form of the pleadings, these allegations to be true, the defendants justified what they had done, by setting up their charter, which authorized the construction of their railroad across or upon any highway. To this defense there was a demurrer. I think the pleas demurred to did not contain a legal justification of the acts alledged in the declaration. I agree with Chief Justice Nelson, that though the company were authorized to occupy the road, they were to occupy it at their peril, in a way not to prejudice private rights. The owner of land adjacent to a street has a right, as an essential incident to his title, to certain services and easements in the street, which are as inviolable, and may be as valuable to him, as his right to the land itself. Among these is the right of *free and unobstructed passage* unto and upon the street to and from his adjacent land. Of this right the pleadings, in *Fletcher* v. *The Auburn and Syracuse Railroad Company,* admitted the plaintiff had been deprived; and if he had, I do not see why he was not entitled to compensation in damages for the injury he had sustained, notwithstanding the authority from the legislature to the defendants to occupy the street.

But there is an obvious and clear distinction between that case and the one under consideration. In the one case, a lawful right had been exercised in an unlawful manner, and it resulted in a violation of the private rights of the plaintiff. In the other case, the defendants have pursued the authority conferred upon them in a lawful manner, though it may have resulted in consequential damages to the plaintiff. The law of such a case is clearly stated by the same learned judge whose decision is the subject of this review, in *The First Baptist Church &c.* v. *The Utica and Schenectady Railroad Company,* (6 *Barb.* 313.) "The mere consequential advantages or disadvantages of a railroad to a neighborhood," he says, "can not be the subject of a private action. Its termination, for instance, may incidentally influence the value of real estate, greatly enhancing the property of some persons in the vicinity; but the corporation can claim no compensation for the improvement; while others may suffer a cor-

Chapman *v.* Albany and Schenectady Railroad Co.

responding depreciation and be remediless. These are fluctuations to which real property is subject. On the one hand there is an accidental advantage for which the fortunate owner makes no return, and in the other it is *damnum absque injuria.* The mutations in business, and the consequent change in the value of property constantly occurring from the improvements of the day, are, as a general thing, not the foundation for a legal claim. Few railroad companies could sustain themselves under such a rule of accountability."

" The onward spirit of the age," says Chief Justice Robertson, in the opinion to which I have already referred, " must, to a reasonable extent, have its way. The law is made for the times, and will be made or modified by them. The expanded and still expanding genius of the common law should adapt it here, as elsewhere, to the improved and improving condition of our country and our countrymen. And therefore, railroads and locomotive steam-cars—the offspring as they will also be the parent of progressive improvement—should not, in themselves, be considered as *nuisances*, although, in ages that are gone, they might have been so held, because they would have been comparatively useless, and therefore more mischievous."

In whatever aspect this case may be considered, it seems to me that it must be held to belong to that numerous class of cases in which it has been held that persons acting under legal authority to grade or improve streets are not answerable for *consequential damages* which may be sustained by those who own land adjacent to the street, provided such authority is exercised with proper care and skill. " And this is so," using the language of Bronson, Ch. J. in *Radcliff* v. *The Mayor, &c. of Brooklyn,* above cited, " whether the damage results from cutting down or raising the street, and although the grade of the street has been before established and the adjoining landholders had erected buildings with reference to such grade."

A new trial must be awarded, with costs to abide the event.