## WILLIAMS *vs.* THE NEW-YORK CENTRAL RAILROAD COMPANY.

Where land is gratuitously dedicated to the public, by the proprietor, for the purpose of a street or highway, in a city or village, and the public authorities accept it as such, the character of the street, and the power and authority of the municipal corporation over it, are the same as if such street had been laid out, originally, and opened, as a public street, by the order and direction of the corporation.

The trustees of the village of Syracuse, being by their charter, invested with all the powers, and required to discharge all the duties, which by law are given to, and enjoned upon, commissioners of highways in towns, had the power to assent to the use of a public street by a railroad company, for the purposes of its road.

Where the owner of land in a city or village dedicates it to the public, for the purpose of a street, and the dedication is accepted by the proper authority, although the legal presumption is that the fee of the land is in such owner, yet the easement is wholly granted to the public. And if a railroad company, by virtue of its charter, and under a license for that purpose, given by the proper municipal authority, constructs a railway upon such street, the property of the original owner of the street is not thereby *taken*, within the intent and meaning of the provision of the constitution, requiring compensation to be made to the owner of private property taken for public purposes.

Such occupation of the street, for the purposes of a railroad, is therefore legal, although no provision has been made for compensation to the original owner of the land dedicated.

The use of a street by a railroad is one of the modes of enjoying a public easement, and the only restriction upon its application is that the use to be made of streets must not be utterly incompatible with, or subversive of, the ends for which they were established.

The legislative authority is competent to declare the uses to which highways may be appropriated, and to impart to municipal corporations both permissive and restraining powers over the subject matter.

If neither the constitution nor the laws have been transcended, in a given case, no individual can sustain a suit against a party exercising a right granted to him by competent authority.

The aid of an injunction cannot be invoked to prevent, nor will an action lie to redress, a consequential injury necessarily resulting from the lawful exercise of a right granted by the sovereign power of the state, or conferred by competent municipal authority.

A railroad, in the streets of a city or village, is not *per se* a nuisance; and although individuals residing on the streets thus used may be subjected to some inconvenience from the noise, and smoke, and frequency of passing trains, yet it must be a very special and peculiar case in which real estate can be injured by mere noise, or the usual concomitants attending the passage of a railroad train. *Per* BACON, J.

Williams *v.* New-York Central Railroad Company.

That which is authorized by an act of the legislature cannot be a nuisance.

An assumption, in the inquisition of appraisers of damages on account of lands taken for a railroad, "that the railroad company will construct across said railroad, a suitable and convenient crossing place or places, for the convenient occupation of the adjacent premises," &c., does not impose any obligation upon the company to construct such crossing; *it seems.*

THIS was an appeal by the plaintiff from a judgment rendered against him, for costs, at a special term of the court. The action was brought to recover damages occasioned by the construction and use of the defendants' railroad on Washington street in Syracuse, and to restrain the defendants from the further use of the same. The cause, being at issue on the complaint and answer, came on to be tried without a jury, on the 3d day of March, 1854, before the Hon. F. W. Hubbard, one of the justices of this court, at the Onondaga circuit. At the commencement of the trial, the counsel for the defendants admitted the following facts; subject, however, to any objection as to their effect, viz : (1.) That about the year 1837, "The Syracuse and Utica Railroad Company" organized and became a body politic and corporate, under and by virtue of an act of the legislature of the state of New-York, passed May 11th, 1836, entitled "An act to provide for the construction of a railroad from Syracuse to Utica," subject however to all the conditions and restrictions, and with the rights and privileges contained in another act of the legislature of the state of New-York, passed May 3d, 1836, entitled "An act to provide for the construction of a railroad from Attica to Buffalo." (2.) That subsequently the company went on and constructed a railroad from Syracuse to Utica, which was completed in or about the year 1839 or 1840 ; since which they (the said company) have used and occupied it as and for a railroad up to the 6th day of July, 1853, when the defendants took possession, and have since continued to occupy and use it, for the same purpose. (3.) That prior to the location of such railroad, and prior to the organization of said company, the plaintiff, then a large owner of vacant lands between the then village of Syracuse and Lodi, desiring to bring such lands into market as village property— having joined with other contiguous owners of lands, and laid

out such lands into blocks and village lots for that purpose—in conjunction with such contiguous owners, laid out Washington street, in the complaint mentioned, and voluntarily and gratuitously appropriated and dedicated the lands occupied by it to the uses and purposes of a public street and highway, and filed a map of such street in the proper office; and that, in virtue of such dedication and the acceptance thereof by the public authorities of said village of Syracuse, it has been since used and occupied as a public highway for the ordinary passage of teams, carriages, foot passengers, &c. (4.) That, in building their said railroad, the said Syracuse and Utica Railroad Company located and constructed the same on said Washington street, and extending it along upon the north half of said street between the center of the street and the side-walk on the north side, into the heart of the city, (then village,) to and across Salina street, a distance of a mile or more, which they used and occupied as and for a railroad from the time of its construction until the 6th day of July, 1853, when the defendants, the New-York Central Railroad Company, having first organized, under and pursuant to an act of the legislature of the state of New-York, passed April 2d, 1853, entitled "An act to authorize the consolidation of certain railroad companies," took possession, and have since occupied and used it for the same purpose. (5.) That from the year 1834 to the present time, the plaintiff has been and still is the owner in fee simple, in his own right, of lands fronting upon Washington street aforesaid, and upon that part of it where the said railroad was and is constructed, which said lands extend to the center of the street, his fee in the land occupied by the street never having been granted away or surrendered, and that by reason of the construction and use of said railroad to the time of the commencement of this suit, the plaintiff has sustained at least nominal damages, in the impaired value of his lands and of the rents and profits thereof. (6.) That at the time of the location and construction of said railroad as aforesaid, and subsequently thereto, the plaintiff owned other lands on said street, extending to the center thereof, which however were sold and conveyed by him before this suit was commenced; but in the sale of said

lands the plaintiff did not transfer or part with any claim which he might then have against said Syracuse and Utica Railroad Company, for damages in respect to such lands, occasioned by the construction and use of said railroad; and that before such sales were respectively made the plaintiff had sustained at least nominal damages, by reason of the depreciation in value of said lands. (7.) That at the time of the location and construction of said railroad as aforesaid and subsequently thereto, the plaintiff owned other lands on said street, extending to the center thereof, which lands were sold and conveyed by him before this suit was commenced; but in such sale the plaintiff did not transfer or part with any claim which he might then have against said Syracuse and Utica Railroad Company, for damages in respect to such lands, occasioned by the construction and use of said railroad; and that before such sales were respectively made the plaintiff had sustained at least nominal damages, by reason of the depreciation in value of said lands. (8.) That at the time of the commencement of this suit, the defendants were running a large number of trains of cars on said railroad on Washington street daily, and the cars run over the said road have always been and still are propelled exclusively by steam power. (9.) That neither of the lots now owned by the plaintiff on Washington street aforesaid, lie upon or adjoin any public or private way, except said Washington street. (10.) That the said railroad from Syracuse to Utica has yielded annually large profits to the owners, since business was commenced upon it. · (11.) That the plaintiff has received no compensation for the occupation of his lands in the street, nor have any damages been assessed.

On the part and behalf of the defendants the plaintiff admitted the following facts, subject however to any objection to their effect: (1.) That on or about the 6th day of July, 1853, the defendants became a consolidated railroad company, under and pursuant to an act of the legislature, entitled " An act to authorize the consolidation of certain railroad companies," passed April 2d, 1853, having taken the steps and proceedings for consolidation contemplated and required by that act, and that such consolidation embraced the Syracuse and Utica Railroad Company and oth-

er companies between Albany and Buffalo. (2.) That prior to such consolidation the Syracuse and Utica Railroad Company was a corporation, duly organized and prosecuting its business under an act of the legislature to provide for the construction of a railroad from Syracuse to Utica, passed May 11, 1836, and another act to provide for the construction of a railroad from Attica to Buffalo, passed May 3, 1836, the provisions of which are made applicable to the said Syracuse and Utica Railroad Company by the said act incorporating the same. (3.) That after said Syracuse and Utica Railroad Company was so organized, the directors thereof proceeded to cause examinations and surveys to be made, with a view to the selection of the most advantageous course for their railroad between Syracuse and Utica; and having made such examinations and surveys, they, the said directors, on or about the first day of May, 1837, selected and designated, by certificates under their hands and seals, the course which they deemed most advantageous for said road, which certificates were duly filed in the office of the clerk of each county through which the said road was to pass, including the county of Onondaga, and that no appeal was taken by any party from such location, nor any proceeding to change the same. (4.) That the course so designated, proceeding from east to west, intersected Washington street in Syracuse, near the eastern termination thereof, and passed along and upon the same to the western termination thereof, embracing all that part of said street on which the lands in question of the plaintiff in their course are situated, and that at the time of such location the plaintiff resided in Syracuse. (5.) That before the said Syracuse and Utica Railroad Company constructed their road or any part of it in said street, and on the 1st day of July, 1837, the trustees of the village of Syracuse passed a resolution in the words following: " At a meeting of the board of trustees of the village of Syracuse, held at the trustees' room on the 1st day of July, 1837—present the whole board—the following proceedings were had : The Syracuse and Utica Railroad Company having located the line of their railroad through Washington or Second South street for the whole length of the same, and now present, through John Wilkinson, Esq., their attorney, an application to

Williams *v.* New-York Central Railroad Company.

the trustees of this village, asking them to approve such grade of said street as shall be conformable to the grade of the other streets of this village, and assenting to the use of the street for said railroad company; it is, therefore, on motion of William Jackson, resolved, that the Syracuse and Utica Railroad Company be authorized to grade Washington or Second South street, conformably to the grade of Lock, Genesee and Salina streets, as they may be fixed upon by the trustees, to be ascertained by the survey of Mr. O. H. Lee, now making, *and that the said railroad company may lay down their rails in said street, and use the same as the line of their said railroad*— but they shall not exclude the public use of said street, the same remaining a public street of said village, with the permission hereby granted to said railroad company, they keeping the street, except the side-walk, in proper repair. Also resolved, that the clerk make a transcript of these resolutions, and deliver the same to said company." (6.) That after the said resolution was passed, the said Syracuse and Utica Railroad Company proceeded to grade Washington street in the manner specified in the resolution, and to lay down and construct a single track of their railroad in the same street, of suitable width and dimensions, upon the course so designated as aforesaid by the directors. (7.) That the said railroad company proposed to locate and build their depot in Washington street, and to extend the same from Salina street eastward to Warren street, about eighteen rods; that before locating said depot the trustees of the village called a meeting of the taxable inhabitants thereof, which was held on the 26th day of December, 1838, at which a resolution was passed in the words following: "Resolved, that the Syracuse and Utica Railroad Company be and hereby are permitted to erect their passenger depot building in Washington street about 49 feet wide, and continue the same during the existence of the corporation by the terms of its present charter, or by renewal, on the following conditions: 1st. That said railroad company shall purchase four feet in width off from the south side of block No. 101, and also about twenty-six feet in width off from the north side of block No. 108, extending through in each case from Salina

to Warren street, and shall throw such pieces of land open to public use, making an alley through from Salina to Warren street about fourteen feet wide on the north side of said depot building, and a street through in like manner immediately south of said building thirty-three feet wide, and shall pave said alley, and from twenty-three to twenty-five feet in width of said street, and shall flag along the south side of said street, against block No. 108, a side-walk, with suitable curb-stones, of from eight to ten feet in width, as may be directed by the trustees of the village—all which shall be done in the best manner—and shall keep said alley, street and side-walk in repair during the continuance of this grant.    2d. That the said company shall, within one year from this time, set out a row of suitable and proper shade trees on each side of said railroad, from the west line of said railroad to the bridge over the railroad in Beach street in Lodi, not over two rods apart, and at such distance from the lines of the road as the village ordinances require ; and, in case of the death or destruction of any of said trees during the continuance of the privilege hereby granted, shall supply the deficiencies yearly with suitable trees.    3d. That if the trustees of the village and a committee (consisting of Messrs. Moses D. Burnet, Peter Outwater, jr., Jason C. Woodruff, Charles A. Wheaton and William A. Cook) shall deem it expedient, said company shall continue the stone drain now laid down from the creek to Salina street, on the north side of Washington street, to such a point east as the said trustees and committee shall deem expedient, not extending further than a point this side of Academy Hill, where the yellow brook crosses the railroad track, and of the same dimensions with the part already made, and shall keep the same in repair during the continuance of the privilege hereby granted."    (8.) The trustees of the village of Syracuse and the committee appointed in said resolution met together on the 26th day of January, 1839, for the purpose of determining as to the expediency of requiring the said railroad company to continue the stone drain, in the resolution of taxable inhabitants, and they then determined it was expedient that the company continue such drain, according to the said resolution.    (9.) That on

the first day of April, 1839, the trustees of the village of Syracuse took the proceedings which are set forth from folio 19 to folio 26, of the answer in this cause; [relative to the altering and widening of Washington street.] (10.) That after the said meeting of taxable inhabitants, and after the said joint determination of the trustees of the village and the committee appointed at that meeting, and after the proceedings of the trustees so had on the first of April, 1839, the said Syracuse and Utica Railroad Company went on, and in the summer of 1839, built their depot in the location aforesaid. They also in the same season purchased strips of land off from blocks Nos. 101 and 108, extending from Salina to Warren street, as specified in said resolution of taxable inhabitants, and opened the same to public use, and paved the alley and street as required by said resolution, also flagged along said street, and made the side-walk as directed by the trustees of said village; and also set out a suitable and proper row of shade trees on each side of said railroad about one mile in length, as required by said resolution of taxable inhabitants, not over two rods apart, and at the proper distances from the lines of the street; also built the continuation of the stone drain in Washington street as required as aforesaid; and that said company performed all other conditions required by the resolutions and proceedings aforesaid. (11.) That the expense of so grading said street, laying said single track, building said depot and doing the other acts and things aforesaid, was at least forty thousand dollars. (12.) That from the time the said single track was constructed as aforesaid, down to the time of the consolidation aforesaid, the said Syracuse and Utica Railroad Company continued to be a corporation under its charter, and continued to use the said railroad track through Washington street and the said depot, and during all that time kept and maintained the said rows of trees, and kept the said street in proper repair, so far at least as compatible with the existence of said railroad track and use thereof. (13.) That some time before the 28th day of June, 1853, the said Syracuse and Utica Railroad Company commenced to excavate and grade in Washington street, with a view of laying

down and using a second or double track of said railroad, and that on said 28th day of June, 1853, the common council of the city of Syracuse passed a resolution in the words following: "Resolved, that the grade of Washington street be fixed as represented by a survey and map recently made by the city surveyor, or that the portion of said street already graded and finished by the Syracuse and Utica Railroad Company, in accordance with said survey, be adopted, and that the said railroad company be required to finish the grading of said street according to said survey, and under the supervision of the committee on streets and city surveyor." (14.) That shortly before the said resolution was passed, the surveyor of the city of Syracuse, at the request of the railroad company, had made a map and survey designating the grade of Washington street, with a view to the construction by the company of a double track or railroad, according to which the excavation and grading had been commenced as aforesaid. That the grade so designated required the street to be excavated some two or three feet, and to be refilled with gravel. That after said resolution was passed, and after the consolidation aforesaid, the defendants in this case went on and excavated and graded the south half of said street according to said map and said resolution, for the purpose of laying the said second or double track, the single track aforesaid having been built north of the center of said street, and they also went on and laid down the said second track, but the same was not completed in all respects when this suit was commenced. (15.) That the map and survey aforesaid also required the north half of said street, on which said first track was laid, to be excavated and refilled in the same manner which the defendants at the commencement of this suit proposed and intended to do, and they also proposed and intended to relay said first track on such new grade and on the same level with the said second track so laid down as aforesaid. When the whole work is completed, the grade of the said street and the level of said tracks will be about one foot lower than the said street and single track formerly were, and in some places more than one foot.

The testimony being closed, the court found and stated that the following facts were established upon the trial: (1.) The several facts and matters contained in the two stipulations signed by the attorneys for the respective parties, which are above set forth. (2.) That in the fall of the year 1853, the defendants constructed a double or second railroad track on said street, past and upon lands, the fee simple of which was then and now is in the plaintiff, subject to said highway, extending to the center of the street, which however was not completed at the time this suit was commenced. That said two tracks are located, one upon each side of, and about three feet from, the center of the street, and run so, parallel with each other, through the whole length of the street past the plaintiff's lands. That both of said tracks were constructed on the street without the plaintiff's consent, and that his damages for the use and occupation of the street, by the railroad have never been assessed or paid. That the street is 66 feet wide, and that the side-walks occupy about 12 feet on each side to the curb-stone, and then it is 18 inches more to the gutter, and that the two tracks are each of 5 feet gauge from the outer sides, and run about equi-distant from the side-walks. (3.) That the Syracuse and Utica Railroad Company acquired the right to construct their railroad across lands which the plaintiff then did and still does own on farm lot 224 in Syracuse, mentioned in the complaint, east of the tunnel, by an assessment under their charter and the payment of the damages assessed. That those damages were assessed in 1837. That no bridge was built until the year 1849, when the Syracuse and Utica Railroad Company built a bridge across their excavation on the plaintiff's lands. That from the year 1837 to the year 1849, the plaintiff did not have the use of about five acres of tillable land, which was rendered inaccessible by reason of the said excavation of about six feet in depth. That the said Syracuse and Utica Railroad Company took possession and constructed their road through said lands under the said assessment and payment of the damages so assessed. (4.) That the company were not guilty of any negligence or misconduct, in constructing or operating their railroad on Washington street, nor of any excess of

Williams *v.* New-York Central Railroad Company.

authority. Nor had the defendants been guilty of any such negligence, or misconduct, or excess of authority.

The court thereupon made and stated the following conclusions of law: 1. That the construction of the railroad on Washington street, and the use of it by the companies, was consistent with, and in pursuance of, the original dedication of the lands to the purposes of a public highway. 2. That the said railroad, in respect to both the single and double tracks, was constructed in Washington street by lawful authority under the original charter, the resolution and proceedings of the trustees of the village of Syracuse and of the common council of the city, and under the general railroad act. And that the resolutions of the said trustees and common council, set forth in the cause, were valid, and such as they had lawful authority to make. . 3. That the defendants, under and by virtue of their organization, and the act of consolidation, assumed all the liabilities of the Syracuse and Utica Railroad Company to the plaintiff. 4. That the simple laying down of the railroad tracks on the street and maintaining and using them, as was done by the companies, do not constitute a nuisance. 5. That the plaintiff has not made a case which entitles him to damages for the neglect to maintain a crossing on his lands on farm lot 224. 6. And that the right to maintain the road on the street being established, the plaintiff was not entitled to recover damages for injury to the value or rents and profits of his lands on the street.

The court thereupon decided that the plaintiff was not entitled to maintain his action; and judgment was given for the defendant, with costs. The following opinion was given by the justice at special term:

HUBBARD, J. "The complaint in this case seeks two-fold relief—the restraining the defendants from using their railroad located on Washington street in Syracuse, and the recovery of damages. This involves the inquiry whether the location of the railway track along the street was lawful, and if it was, whether any specific acts of wrong have been committed by the

defendants which will authorize the recovery of compensation. The first is the important inquiry.

It is not disputed by the plaintiff's counsel, as I understand, that the defendants derived their grant to the use of the street from the local municipal authorities, and that such grant was authorized by the legislature. But it is contended, or at least this is the gravamen of the action, that this grant was *absolutely void*, on the ground that neither the legislature nor the common council of Syracuse could constitutionally allow the *taking of private property for public use, without compensation*. The argument is, that the railroad was a misappropriation of the highway to purposes not contemplated or justified by the original dedication; that as to the defendants, the plaintiff and others, land owners bordering the street, were restored to their primary rights of fee in the highway, and should have been, therefore, compensated in damages for the right of way, as required by the constitution. This argument, it seems to me, has not the merit of plausibility. It assumes that the use of a highway by a railroad in common with the public, is a perversion of the intent of dedication. But this is plainly fallacious. It is now well settled that railroads are so far public uses that private property may be taken in their construction; and it would be in accordance with this doctrine to say that they are *quasi* public highways, because it is the great facility which they afford to travel and transportation which stamps them with their public character. In other words, railroads are but the introduction of a new motive power, for the more convenient and expeditious transaction of the business, and furtherance of the objects, of common highways. There is, therefore, no incompatibility. On the contrary, a railroad is simply an improved mode of using a highway. How, then, can it be said that the easement is perverted by such use?

It may be stated as a general rule that, by the act of dedication of a right of way, the owner of the freehold consents that the easement may be enjoyed by the public in any manner consistent with the objects of the grant. It has been shown that a railroad located along a highway is so consistent; and it may

also be stated as a rule, that a purchaser of land adjoining a public road takes it subject to every advantageous or disadvantageous enjoyment or use of it in a lawful manner, and compatible with the just rights of all. The plaintiff may be suffering some of the disadvantages of dwelling in a populous town; he may be incommoded by the noise and confusion of the engines and cars passing his abode; access to his house may be rendered more dangerous, and the use of the street by private carriages more hazardous, and perhaps the general or market value of his land bordering the street may have been impaired; but these annoyances and injuries are such as an individual is frequently compelled to suffer without redress, because they are of minor importance compared to the general good which springs from the cause of which he complains. The question does not arise in this case, whether public officers, having the charge of highways, can surrender to a corporation the sole possession of a highway, or such control or monopoly of it as to exclude the public from using it in the ordinary manner.

There is no pretense of the creation of a *purpresture* by the defendants, or that the municipality of Syracuse have relinquished any power of regulation over the highway, or the railroad. It appears from the evidence that the second track will not add to the inconvenience of passage in the street by the public—that when the highway is fully restored, as contemplated by the company, there will be but little difficulty in using the street with carriages, except at the point of time when the engine and train is passing. This is the extent of the annoyance to the public, and this is precisely what is experienced, although in a minor degree, from lines of stages and omnibuses, in the cities. What I hold is, that this railroad is neither a public or private nuisance, as it is constructed and operated along Washington street. It was located there by authority of law, and its continuance or use cannot, therefore, be restrained.

I have anticipated mainly the second point of inquiry—whether the plaintiff is entitled to recover damages. He cannot recover for the right of way, because that was granted in the original dedication, the railroad being compatible with the public ease-

Williams *v.* New-York Central Railroad Company.

ment. No damages are recoverable, which are *simply conse-quent* upon the laying the track in the highway and using the railroad in the ordinary manner. The only damages recover-able must be such as arise out of the *careless or negligent acts* of the defendants. A railroad company, like an individual, is responsible for specific acts of wrong. There is no proof that the defendants have so improperly constructed their track as to be specially injurious to the plaintiff: on the contrary, the proof shows a degree of carefulness and skill exercised which will ulti-mately restore the surface of the street to its former state, as to the grade directed by the common council, so as not unneces-sarily or essentially to impair its usefulness as a carriage way. As to the manner of operating the railroad, there is no imputa-tion of imprudence or carelessness, and of course no special dam-age could be claimed as to that. It follows that the action can-not be maintained."

*S. Sessions,* for the plaintiff. I. That provision of the char-ter which authorized an appeal to be taken from the location, does not affect the rights of the parties. The mere location does not give the right of possession, nor the right to construct. No compensation is provided for a mere location of a line of road, for the plain reason that no one is harmed until ground is broken for the construction. The company only is concluded. (*Bona-parte* v. *Camd. and Amboy Railroad Co.,* 1 *Bald. C. C. R.* 230.) II. The fee of the lands over which a highway passes is in the adjoining owner. In virtue of the fee vested in him, he may maintain trespass ; he may maintain ejectment and recover possession, subject to the public easement, whether he be a ten-ant in common or sole owner of the fee. (1 *Conn. R.* 130, 124, 146. 6 *Mass. R.* 454, 56. 1 *Burr.* 143. 2 *Strange,* 1004. 1 *Wils.* 107. 6 *East,* 154. 2 *John.* 356–62. 15 *Id.* 447. 20 *Id.* 743. 1 *Wend.* 262. 5 *Id.* 523. 3 *Id.* 142. 6 *Id.* 461. 8 *Id.* 85. 2 *Id.* 742. 1 *Cowen,* 238. 4 *Id.* 542.) III. But it is said, and here solemnly deided, that " the construction and use of the railway on this street, by these companies, is consistent with, and in furtherance of, the original dedication of the lands

to the uses of a public highway"—that "a railroad is a highway," at least "an improved mode of using a highway"—that the contrary doctrine is "plainly fallacious," "without the merit of plausibility." It is to be assumed, from the source of this somewhat extraordinary doctrine, that it is seriously contended for, and as such we answer it.  (1.) The legislature plainly did not so understand it, else they did an idle thing when they incorporated into the very charter which granted this franchise the right to cross highways when it should be necessary, by an express provision.  (2.) The company did not themselves so understand it, else they would not have deemed it necessary to apply to the local municipal authorities for license to use the street; nor yet did the local municipal authorities so understand it, or they would not have gone through the idle ceremony of passing the resolution of July 1, 1837.  (3.) The result must be, that a private corporation or individual may make any appropriation of the highway to railroad purposes, to the entire exclusion of ordinary travel, without any authority whatever, upon the principle that "the improved mode of using" justifies the appropriation, and therefore exempts the party appropriating from all liability for consequences, to wit, the total exclusion of ordinary travel, and the "hazard," and "danger," to such as venture upon the street.  (4.) But the company themselves do not rest their claims upon any common law principle.  They seek for some legislative authority—some authority from the public, either specific or general.  IV. We venture, however, to contend, that the construction and use of a railroad on a highway, in so far as it affects the common and free use of the way, not only, but in so far as it actually occupies the lands covered by the easement, is a misappropriation of the highway to purposes not contemplated by the original dedication, nor yet justified by any principle of common law.  (1.) The easement is vested in the public, and they have the right of exclusive occupation, without regard to the proportion actually needed; and if a railroad company construct their road upon the easement, without any grant of privilege from the public, they are indictable, at the suit of the public.  (The King v. Morris, 1 B. & Adol. 441.)  (2.) The

use of a railroad of necessity obstructs the right of common and free passage. When the company go upon the land the individual must retire ; his right only consisting in having time sufficient to retreat. His right of passage over the space covered by the railroad is subjected to that of the company. Their several use is not co-equal or consistent. (3.) But it is said that the railroad is of itself a highway. To this we answer ; 1. It is private property, and as such may be sold, or turned out in payment of debts, or as security for the payment of debts, (3 *Rob.* 513,) or it may be levied upon and sold on execution, (5 *Iredell*, 297.) It is liable to taxation in the counties through which it passes ; not the materials of which it is constructed merely, but the easement. (4 *Hill*, 20. 4 *Paige*, 384. 12 *Barb.* 223.) 2. The accommodations to the public are not the same as those of a highway, nor are the remedies, for want of accommodation, the same. (3 *Hill*, 567. 1 *Barn. & Adol.* 441. 17 *John.* 454.) There is no remedy by civil action against an individual who has done injury to a public road ; while a railroad company has such a remedy. The public, however, have a remedy by indictment, which the company has not. 3. The two roads are not opened in the same way. Highway commissioners have no power to acquire a right of way for a railroad company. 4. The existence or continuance of a railroad is voluntary, and not within the public control. 5. The public interest, in virtue of which the right of "eminent domain" is exercised, consists not in the property of the road—either the materials of which the road is constructed or the easement over which it passes—but simply in the franchise, the right granted, to transport persons and property in a particular mode and manner, taking toll. 6. The public have no right to use the railroad, no right to go upon it, no right to drive upon it, nor to travel upon it. They have no control in fixing, nor interest in, its location. The rights of the company are quite as distinct from those of the public as those of any other person or corporation exercising a franchise. The whole right of the public is expressed in saying—"They have the right to be carried or transported in the company's cars on paying for the privilege." The unrestrained right to go upon it

which constitutes the distinguishing feature of a common and free way is, by implication, excluded by the very granting to the company the franchise itself. "The genius of the common law" is sufficiently expanded and adapted to new exigencies by the exercise of the right of eminent domain, in taking private property. No true friend of the company would ask any further expansion. V. There being no principle of common law upon which to base the assumed right, the first question which arises is, whether there is any valid license or authority from the public, which locally includes the highway in question. The legislature has given no such authority, either directly by the charter, or indirectly through the local municipal authorities. Certainly, no reasonable interpretation can deduce from the language of the general railroad act any such latitude of power as that exercised by the companies. The only authority locally including the street in question is the resolution of the village trustees of July 1st, 1837, which is void. (1.) The legislature had not empowered them to pass such a resolution, or in any wise to consent to a monopoly, by any one, of a street or any part of it. (2.) The legislature vested them with the control over streets; to work them; to improve them for the purposes of ordinary travel; and they had neither power to abridge that travel, nor to divest themselves of that control. (4 *Burr.* 2204. 12 *East,* 22.) (3.) They had no power to make contracts which might or could cripple the action of their successors. (6 *Wheaton,* 597. *Milhau* v. *Sharp,* 17 *Barb.* 435.) VI. Even though the entry and use by the companies may be authorized and legal as against the public, yet they are wholly unauthorized and illegal as against the plaintiff. His rights are wholly unimpaired by the action of the legislature, the village trustees and the common council. (3 *Hill,* 567. 25 *Wend.* 462. 18 *Id.* 9. 5 *Cow.* 165. 17 *John.* 195.) VII. The plaintiff never assented to the construction or use of the road on that street, by deed or word. The companies were apprised of his hostility. But if they have expended any money there, it is their own act which has produced the difficulty. It does not lie in their mouths to say he did not interpose force, or that he had not the right to

take his own time to incur the expenses of a litigation. (*Spencer* v. *The London and Birmingham Railway Co.*, 1 *Railway & Canal Cases*, 169. *Att'y General* v. *Manch. and Leeds Railway Co.*, *Id.* 436.) VIII. But they are guilty of maintaining a nuisance to the plaintiff, if not *per se*, then most certainly *de facto.* That is a nuisance which renders the enjoyment of property uncomfortable ; *a fortiori*, that which renders all access to it " dangerous" or " hazardous." (*Rex* v. *White*, 1 *Burr.* 334. *Fish* v. *Dodge*, 4 *Denio*, 311. *People* v. *Cunningham*, 1 *Id.* 524. *Renwick* v. *Morris*, 3 *Hill*, 621. *First Bap. Ch.* v. *Sch. and Troy Railroad Co.*, 5 *Barb* 79. *Renwick* v. *Morris*, 7 *Hill*, 575. *Bradey* v. *Gill*, *Lutw.* 69. *Jones* v. *Powell*, *Hutt.* 136.) IX. The remedy then is clear. It must follow and carry out the rights of the parties. (4 *John. Ch.* 609.) (1.) The occupation being unlawful, and not fugitive or temporary but permanent, they should be restrained from all occupation. (3 *Atkyns*, 21. 7 *John. Ch.* 332.) (2.) It being a nuisance, even though the occupation were lawful, it would be abated, both at law and in equity. In cases of private nuisance, the two jurisdictions are concurrent. (7 *Barb.* 395. 3 *Id.* 282. 2 *John. Ch.* 272.) (3.) The occupation being unlawful as against the plaintiff, damages follow of course. (*See cases supra.*) (4.) It being a nuisance, abatement and damages follow of course, whether the occupation was by lawful authority or not. X. It is also contended that the companies have not fulfilled the requirements of law, in that it is provided they should restore such roads as they cross, &c. " to their former state or condition of usefulness," and therein have usurped powers not granted, and thus have made themselves trespassers. XI. As to the six acres east of the tunnel, it is contended that the company, having accepted the verdict and assessment, and acquired their title under it, are estopped from denying the force of any of its conditions, upon them. (14 *Barb.* 364.'

*Geo. F. Comstock*, for the defendants. The Syracuse and Utica Railroad Company were authorized by the legislature to build a railroad with a single or double track between Syracuse and

Utica, "by the most direct and eligible route," and to operate such road with steam power. The directors were empowered to select and designate the line or course of the road; and the course so designated was declared to be the one on which the company should build its road. Any person aggrieved had a right to appeal. The directors duly located the road, under these powers, and such location embraced Washington street in Syracuse. No one appealed, and such location therefore became final and conclusive as against all persons. (*Laws of* 1836, *p.* 422, § 1. 4 *Id.* 319, §§ 4, 9.) II. After such location of the railroad it was constructed through Washington street, under due authority derived both from its charter and from the public authorities of the village of Syracuse. (1.) The charter expressly authorized the road to "intersect" and be built "upon any highway." The road in question "intersected" Washington street and was built "upon" the same. (*Stat. of* 1836, *p.* 319, § 11.) (2.) The resolutions of the trustees of Syracuse, passed July 1, 1837, and April 1, 1839, were also in all respects valid, and within the powers of said trustees; and such resolutions expressly authorized the construction of the road in Washington street. (*Laws of* 1825, *p.* 220. *Laws of* 1835, *p.* 340.) (3.) The construction of the road with a single and double track in Washington street is also expressly authorized by the general railroad act of 1850. (*Laws of* 1850, *p.* 211, § 27, *sub.* 5. *Id.* § 49.) III. It follows, from what has been said, that the railroad was constructed in Washington street, by due authority of law, unless the provision of the constitution, requiring compensation to be made as the condition of taking private property for public use, has been violated. That provision has no application where a railroad is constructed in a street or highway. (1.) Private property is not taken at all in such a case, although private individuals may own the technical fee of the land dedicated or taken for the street. It is now well settled that the use, of a street by a railroad is only one of the modes of enjoying the public easement. (*See case under point* IV. *See also* 1 *Hill,* 189, 191.) (2.) Individuals cannot limit or define the uses of a highway, but the legislative

and municipal authorities vested with the control of highways can do so. Both the legislative and the municipal authorities have done this in the present case. They have declared the use of the street by the defendant's railroad to be a legitimate and proper mode of enjoying the easement. (3.) Compensation for consequential damages merely to lands adjoining a highway used for a railroad, is not required by the constitution. There is, therefore, no limitation upon the power of the legislature in this respect. IV. The railroad therefore being located, built and operated in Washington street under due authority of law, and all negligence or excess of power being expressly negatived by the finding of the judge, and no injury to the plaintiff being shown, except such as is consequential merely upon the enjoyment by the defendants of their legal rights, it follows that this action will not lie. (1.) As to the injunction relief claimed in the complaint. This can only be granted upon the theory that the defendants have no legal right to build and operate their road in Washington street. But the legal right has been already shown. (2.) The same principle is fatal to the claim for damages. If ruinous actions for damages can be maintained by all persons who can show a consequential injury, it would be entirely subversive of the right in question. It would, moreover, be a legal anomaly, if an action will lie to redress a consequential injury necessarily resulting from the lawful exercise of a franchise granted by the sovereign power of the state. (10 Barb. 360. 7 Id. 508. 8 Dana, 289. 4 Comst. 195. 1 Am. Law Mag. 52. 2 Livingston's Law Mag. 39. 6 Barb. 313, 318. 12 Id. 616. 13 Id. 646. 4 B. & Ad. 30. 10 Barb. 26. 11 Id. 414. 15 Id. 193.) (3.) The principle embodied in the maxim " sic utere tuo ut alienum non laedas" does not help the plaintiff's case. Where the sovereign law grants the franchise and specifies how it may be enjoyed, the right conferred is absolute, and the only obligation imposed is not to do any unnecessary injury to another. (4.) The plaintiff in this case can take no advantage under the theory that the railroad is a nuisance. That which is authorized by law cannot be a nuisance. The pretense of any negli-

gence, misconduct or excess of power, is expressly negatived. V. The suit cannot be maintained for damages on account of the alleged neglect to build a bridge over the railroad, so as to connect the plaintiff's lands east of the tunnel, on lot 224. (1.) The plaintiff's damages for land taken at the place in question were regularly appraised and paid. But the appraisers, in their inquisition, " assumed that the railroad company would construct a bridge across said railroad." This assumption was entirely unauthorized and void, and therefore could impose no legal obligation. (2.) It may be urged, that by taking the land, under the inquisition, the company impliedly undertook to build the bridge, as the inquisition assumed they would do; and the complaint, so far as this matter is concerned, is framed on that theory. In this view, which clearly is the only one upon which a cause of action can be predicated, the fatal difficulty is that the undertaking was broken at least fifteen years ago, and the action is therefore barred by the statute of limitations, which is duly pleaded. (6 *Cowen*, 238. 1 *Sand. S. C. R.* 98. 4 *Peters*, 172, 182.) (3.) Whatever obligation there may have been originally, it was evidently satisfied and discharged by the substituted arrrangement entered into in 1851.

*By the Court*, BACON, J. On the 11th of May, 1836, by an act of the legislature of New-York, the Syracuse and Utica Railroad Company was incorporated, for the purpose of constructing and maintaining a railroad between the then village of Syracuse and the city of Utica, by the most direct and eligible route, and to carry and convey passengers and property thereon, by the power and force of steam and other mechanical power. By the 4th section of the pattern act under which they were organized, (*Laws of* 1836, *p.* 317,) the directors were authorized to cause examinations and surveys for the road to be made, and to designate and certify the course which they should deem most advantageous therefor, and when so certified, the same was to be deemed the course on which the company should construct the road. By the 9th section of the same act, the corporation were author-

ized to construct a single or double track railroad of suitable width and dimensions, to be determined by the corporation, on the course designated by the directors as aforesaid ; and by the 11th section of the same act, whenever it should be necessary to intersect or cross any highway, the company were authorized to construct their road upon or across the same, restoring the road thus intersected to its former state, or in a sufficient manner not unnecessarily to have impaired its usefulness. Pursuant to the provisions of this act the directors of the Syracuse and Utica Railroad Company caused the necessary surveys and examinations to be made, and in May, 1837, designated the course which they deemed most advantageous for the road, and caused certificates thereof to be duly filed. At the village of Syracuse, the course so designated, proceeding from east to west, intersected Washington street, near the eastern termination thereof, and passed along and upon the same to the western termination of said street, embracing all that part of the street on which the lands of the plaintiff are situated. No appeal having been taken by any party interested in the land or in the street in question, as provided in the act, the route thus designated and certified became the course legally ascertained and fixed as the route of the road. Before proceeding to construct the track of their road, the company, in July, 1837, made an application to the trustees of the village of Syracuse, asking their approval of the grade of the street, in order to conform it to that of the other streets in the village, and their assent to the use of the same for the track of their road ; and thereupon, on the 1st of July, 1837, at a meeting of the whole board, a resolution was duly passed approving the grade, and permitting the railroad company to lay down their rails in Washington street and to use the same as the line of their railroad ; provided, however, that the public were not to be excluded from the use of the street, but the same was to remain a public street of said village, and the company were to keep the same in proper repair.

The plaintiff's counsel contend that no valid license or authority has been shown, which includes the use of the highway in question ; that no such authority is given, either directly through

the charter, or indirectly through the local municipal authorities. We have seen, however, that in the very charter of this company, they were expressly authorized, whenever the route of the road should intersect or cross a highway, to construct their road across or *upon* the same, restoring it, however, in such manner, as not unnecessarily to impair its usefulness; and the same provision, in the precise terms of the enactment in the charter of the Syracuse and Utica Railroad Company, is incorporated in the general railroad act of 1850. (*Laws of* 1850, *p.* 211, § 28, *sub.* 5.) It is not pretended that the street in question is not a highway, within the purview of these acts. It is true the plaintiff and other proprietors of adjacent land, as the complaint avers, gratuitously dedicated the land necessary for that purpose as and for a public street and highway, and the public authorities accepted it as such, but it makes no difference, I apprehend, in respect to the character of the street when dedicated, nor as to the power and authority of the municipal corporation over the subject, whether the highway became such by dedication, or was laid out, originally, and opened as a public street by the authority of the corporation. Assuming Washington street, then, to be one of the streets and highways of the village of Syracuse, it is quite clear that the trustees of the village had the power to assent to the use which the railroad made and has continued to make of the street in question. By the charter of Syracuse, (*Laws of* 1825, *p.* 223,) the village of Syracuse is constituted a road district, and the trustees of the village, by the 7th section, are invested with all the powers, and are directed to discharge all the duties, which by law are given to and enjoined upon road commissioners in towns. By chapter 300 of the laws of 1835, it is enacted, that whenever an association or individual shall construct a railroad upon land purchased for that purpose, upon a route which shall cross any road or other public highway, it shall be lawful for the commissioners of highways to give a written consent that such road may be constructed across or upon such road or highway, and thereafter such association or individual shall be authorized to construct and use such railroad across or on such road or highway, as the commissioners shall have per-

mitted; such road or highway thus intersected or crossod to be restored to its former state, so as not to have impaired its usefulness. Here then, in these two acts, is found the legislation which gave the board of trustees of Syracuse the neeessary jurisdiction over the subject matter of the license applied for ; and their action in the premises was in entire conformity with the provisions of the law under which they acted, and was fully authorized by it. The resolution passed by the board constituted the written consent for the construction of the road in the route in question, which the act contemplated and required. The company constructed the road by virtue of their charter and under the license thus granted to them, and the present defendants, under the consolidation act of 1853, have assumed all their duties and succeeded to all their rights and privileges.

But it is insisted that the railroad acquired no right to occupy or use the street in question, notwithstanding the assumed permission of the municipal authorities of Syracuse, because no provision was made for compensation to the original proprietor of the land dedicated, pursuant to the provision of the constitution requiring compensation to be made to the owner of private property taken for public purposes. The answer to this is, that the property of the plaintiff has not been taken, within the intent and meaning of the constitution. The original owner of the land in this case dedicated it to the public use, and although the legal presumption is that the fee of the land is in the owner, yet the easement is wholly granted to the public. In the city of New-York it has been repeatedly held that the corporation has power to grant to a railroad company the privilege of laying their track through the streets of the city, and that the prohibition of the constitution, which is against taking private property without compensation, does not apply to a case, when the complaint is that the 'injuries are consequential and incidental upon the use which the party complained of is about to make or has made of the granted right; and that to allow a street in a city to be used for a railroad track, either upon its natural surface or by tunnelling, is not a misapplication of it, provided such use does not interfere with the free use of it as a

highway for passage and repassage. (*Drake* v. *Hudson River Railroad Co.*, 7 *Barb.* 508. 10 *Id.* 26. 9 *Paige*, 171.) It is probably true that a larger power is assumed and exercised in the city of New-York over the streets, (the fee of which it is claimed, is vested in the corporation,) than ordinarily obtains in reference to highways in the country; but even in respect to streets in a populous village, such as Syracuse was at the time of the location and construction of the railroad in question, it is held that the use to which they may be devoted, is far more extensive than the mere right of the public to pass over them. They may be used in any way which shall best promote the interest and business of the village where they are located. What will so promote those interests, is to be determined by the municipal authorities to whom the control of the streets is committed. (*Per Harris, J.*, 10 *Barb.* 363.)

Without insisting, therefore, as we well may, that a railroad is only an improved highway, the proposition may safely be assumed, and it has respectable authority in its support, that the use of a street by a railroad is one of the modes of enjoying a public easement, and the only restriction upon its application is, that the use to be made of streets, must not be utterly incompatible with, or subversive of, the ends for which they were established. (*Chapman* v. *Albany and Schenectady Railroad Co.*, 10 *Barb.* 360.) The legislative authority is competent to declare the uses to which highways may be appropriated, and to impart to municipal corporations, both permissive and restraining powers over the subject matter. They have exercised the power in both forms, and the appropriate authority has declared, in this case, that the use of Washington street by the railroad of the defendants is a legitimate and proper mode of enjoying the easement dedicated to the public. It is insisted with pertinency and force, on the part of the defendants, that there is an inherent power in every government to take property for public use, except where the power is restrained by an express and precise constitutional provision. If, therefore, neither the constitution nor the laws have been transcended, in a given case,

Williams *v.* New-York Central Railroad Company.

no individual can sustain a suit against a party exercising a right granted to him by competent authority.

If we are right thus far, it is established that the railroad of the defendants was located, constructed and has been operated, under authority of law; and unless there has been an excess of power, or a negligent exercise of it, the plaintiff has sustained no injury, except such as is consequent upon, and incidental to, the exercise of the defendants' legal right. It is found as a matter of fact in this case, that there has been, on the part of the defendants, no negligence or excess of power. The injury then is merely consequential, and if the defendants are enjoying no more than has been granted to them, no individual can maintain a suit, although he may sustain consequential damages. (10 *Barb.* 360. 4 *Comst.* 195.) The aid of an injunction cannot be invoked to prevent, nor will an action lie to redress, a consequential injury necessarily resulting from the lawful exercise of a right granted by the sovereign power of the state, or authorized by competent municipal authority. These considerations are decisive against the claim of the plaintiff to relief, grounded on the allegation that the defendants are interfering with his paramount right as proprietor of the *locus in quo*, without any authority of law.

Neither is he entitled to relief, on the ground that the defendants are maintaining a nuisance which he had a right to have abated. A railroad is not *per se* a nuisance, (7 *Barb.* 508,) and although the plaintiff and others residing on the street, may be subjected to some inconvenience from the noise and smoke and frequency of passing trains, yet it must be a very special and peculiar case in which real estate can be injured by mere noise, or the usual concomitants attending the passage of a railroad train. That which is authorized by an act of the legislature cannot be a nuisance. (*Per Hand, J.,* 6 *Barb.* 313. *See also Hentz* v. *Long Island Railroad Co.,* 13 *Barb.* 646.) The annoyances of which the plaintiff complains, are such as are frequently experienced by the dwellers in populous towns and cities, from these and other analogous causes; they are incident to their condition, and they must be endured without redress;

" because they are of minor importance compared to the general good which springs from the cause of which they complain." Much was said in the ingenious argument of the plaintiff's counsel in respect to what was styled " the expansive genius of the common law :" it was insisted that it was quite sufficient to satisfy its powers of adaptation to emergent exigencies, to call into exercise the right of eminent domain in taking private property, and that all beyond that extreme boundary was but " wasteful and ridiculous excess." It may be enough to answer this suggestion to say, that it is one of the glories of the common law, the subject of not unfrequent eulogy by grave and honored judges—the " *laudatores temporis acti*"—that it is of such a plastic and accommodating spirit, that it readily and promptly adjusts itself to the changing conditions of society, and to novel circumstances in our relative, social and proprietary relations. New channels of intercourse, newly developed motive powers, expanding commerce and rapidly progressive improvements, demand and authorize the application of wider principles, and broader maxims, than those which satisfied the more limited wants and less ambitious enterprizes of our fathers. To protest against this power of adaptation, inherent in the common law, to cases as they arise in our onward progress, is to restrain and impede, not develop and improve. It would be quite as wise to insist that the maritime law, which was sufficient to regulate the commerce of the world when a Roman galley crept timidly and cautiously along the shore, and was deemed hopelessly lost in a starless night, shall now constitute our entire code, when every ocean is whitened with our canvass, every sea " vexed with our fisheries," and the keels of our adventurous navigators plough as well the regions of equatorial heat as of eternal frost, visit all climes and exact tributes from all lands. " The law," says Ch. J. Robertson, (8 *Dana,* 289,) " is made for the times, and will be made or modified by them. The expansive and still expanding genius of the common law should adapt it here as elsewhere to the improved and improving conditions of our country, and therefore railroads and steam cars, the offspring, as they will be the parent, of progressive improvements,

should not in themselves be considered nuisances, although in ages that are gone they might have been so held, because they would have been comparatively useless, and therefore more mischievous."

This disposes of the whole case, excepting the second ground of complaint, which is a claim to recover for an alleged neglect to maintain a crossing over the road east of Washington street, upon the farm land of the plaintiff, whereby it is claimed he lost the use of some six acres of land prior to the year 1850, when the company constructed a bridge at the point in question. In respect to this claim, the judge before whom the cause was tried has found, as a matter of fact, that the plaintiff has not made a case which entitles him to damages, for the neglect to maintain a crossing on his said lands. It is quite doubtful whether the assumption in the inquisition of the appraisers, that the railroad company would construct across said railroad a suitable crossing place, imposed any obligation upon the company to construct the work in question; but if this were so, the substituted arrangement and agreement of April, 1851, seems to have been entered into by the company, and accepted by the plaintiff, as a full satisfaction and discharge of any obligation which they might have been deemed originally to have assumed. In either aspect the finding of the court would be sustained, and no relief can be justly claimed on this ground.

The judgment of this court at special term is accordingly affirmed.

[JEFFERSON GENERAL TERM, July 3, 1854. *Hubbard, Pratt* and *Bacon,* Justices.]