## HARRIET A. MURPHY, Plaintiff in Error, v. THE CITY OF CHICAGO, Defendant in Error.

### ERROR TO THE SUPERIOR COURT OF CHICAGO.

A city is not liable for damages, resulting from the proper exercise of authority in permitting railroad tracks to be laid in the streets, or in raising the grade of streets. Unless the authorities of a city exceed their power in this regard, there is no liability.

The habendum clause of a deed conveying land to be used as a street, does not limit the power of the authorities; their control over such a street, in reference to grades and the laying of railroad tracks, is the same as over streets

dedicated generally. They may do anything with such a street which is not incompatible with the ends for which streets are established.

It is a legitimate use of a street or highway, to allow a railroad track to be laid in it.

THIS is a special action on the case against the city of Chicago for an alleged breach of duty arising, as appellant claims, out of contract between the parties, the subversion by defendant of plaintiff's easement, in West Water street, Chicago, and special damage to her property abutting upon said street.

The case made by the declaration to which the Superior Court sustained a demurrer, is this : Randolph and Lake streets are parallel east and west streets of said city, crossing the south branch of Chicago river, and important thoroughfares. Block twenty-nine lies between them, immediately west of said south branch. The block is divided into two tiers of lots by an alley, the eastern tier of which fronts on the river. Lot 9, block 29, which the plaintiff owns, is in said eastern tier, and lies next adjoining Randolph street. Prior to 1856, West Water street extended from Randolph to Lake street, across said block, was located east of the east line of the present West Water street, and consequently nearer the river, but leaving a strip of land between it and the river. That the property owners, in said eastern tier of lots, claimed so much of said strip as lay i? front of their respective lots, as wharfing privilege, but which the defendant also claimed. That disputes arose respecting the same, to adjust which, the defendant tendered to the property owners certain propositions, for compromise, which were, briefly, that the city would vacate old West Water street, lay out a new street, the east line of which should be about where the west line of the old street was, and the whole width of such new street to be taken off the east end of said eastern tier of lots, including the plaintiff's; that each owner should pay a certain sum to the city, and then the property owners convey to the city the site of the new street, and the city, in exchange therefor, convey so much of the old street and said strip as lay in front of their respective lots. On the 6th of May, 1856, the plaintiff being

the owner of said lot nine, completed the compromise on her part with the defendant, and the parties made mutual conveyances as aforesaid in one instrument: she conveying to the city that part of lot nine, taken for the new street, and the city, for the consideration of the premises and $2,200 paid by plaintiff, conveying to her so much of the old street and said strip as lay in front of her lot, and between the east line of the new street and the river, in exchange therefor.

That in plaintiff's conveyance of said portion of her lot to be taken for the new street, it was stated, declared and provided, that the city of Chicago was to have and to hold the said premises, as and for a public street or highway in said city, to be used as such, and. for no other use, object or purpose whatsoever.

Which conveyance, the defendant accepted, and the deed was recorded, and the right to the free, unobstructed use of said new street became and was appurtenant to plaintiff's said premises. The plaintiff took possession of the premises conveyed to her by the city, and erected upon them, and on said lot, nine valuable buildings and improvements, abutting upon said new street; that the property became readily available and very valuable for rental purposes. That the chief value consisted in the use of said new street. That there was an easy and convenient access to said new street and her premises from Lake and Ran· ·lph streets, by the intersection of the new street therewith, and' that there were no other means of access to the same, but by said connections with Randolph and Lake streets, and that they were indispensable to the enjoyment of said premises. That it became and was the duty of the defendant to preserve and keep the said new street free from all uses, except those of a street or highway, and to keep the same open and unobstructed, and to permit the plaintiff to enjoy the use of said street, as and for a public highway and street of said city. That said defendant, well knowing the premises, and not regarding its duty in the premises, but fraudulently intending to injure the plaintiff in this behalf, and, for the benefit and purposes of certain railroad companies, and not for its own benefit or purposes, on, to

19

wit, the 16th day of August, 1858, wrongfully, unlawfully, and unjustly passed a certain pretended ordinance, entitled "An ordinance to allow a connection between the Pittsburgh, Fort Wayne and Chicago, and the Chicago, St. Paul and Fond du Lac Railroad Companies, and such other railroad companies as may unite with them." Whereby the said railroad companies were authorized to lay down and use a railroad track in, upon and along said new West Water street, and to cross said Randolph and Lake streets, and tunnel the said last mentioned streets, and carry said last named respective streets over the said railway, and over said West Water street, and use the same for said purposes for an unlimited time. That afterwards, on the 1st day of November, A. D. 1860, without the consent, and against the will of plaintiff, the Chicago and Northwestern Railway Company, under said pretended ordinance, entered into and upon said new street, and the portion thereof conveyed by plaintiff to defendant, and dug up the same, laid down railroad tracks, and the said street, between Randolph and Lake streets, dug up and excavated, threw down thereon divers large quantities of dirt, stones, timber, and laid thereon divers railways, and entered in and upon Randolph and Lake streets, at their respective points of intersection with said new West Water street, and built permanent walls and embankments upon the surface of West Water street, at said points, twenty-three feet high, and all which, the defendant permits and suffers said company to keep and maintain. That by reason of the premises, all access from Lake or Randolph street to and with said new street, (except down a long flight of stairs), was and is entirely cut off, and the plaintiff's use of said new street wholly cut off and destroyed, and said street wholly and effectually closed up for all purposes, except those of said railroad company. That thereby plaintiff's said premises are made wholly untenantable and largely diminished in value.

Scates, McAllister & Jewett, for Plaintiff in Error.

To allow a street, in a city or a village, to be used as a rail-

road track, either upon its natural surface, or by tunneling, is not a misappropriation of it, provided such use does not interfere with the free and unobstructed use of it by the public, as a highway for passage and repassage. Pierce on Railroads, 180; Willard's Equity Jurisprudence, secs. 402, 406; 9 Ind. 469; 11 Barbour, 450; Redfield on Railways, p. 520, sec. 226.

If the city of Chicago, the defendant, had the legal capacity to make the compromise set out in the declaration, then it was bound by the conditions of the conveyance thereunder made, precisely like an individual or private corporation.

The defendant claimed the ownership of the land conveyed to plaintiff, abutting on the new street; and, in making the compromise, taking the conveyance from the plaintiff, with the conditions, as to the use of the land conveyed—in granting to plaintiff, in exchange therefor, the land lying between the east line of the new street and the river, and putting such deed on record, the city of Chicago is to be regarded as acting in its character of a private corporation, and not in its public, political or municipal character, and is bound by the same obligations and duties which would attach to an individual, under the same circumstances. *Bailey* v. *The Mayor, etc., of New York,* 3 Hill, 531, and cases cited; *Brown* v. *The Mayor, etc., of New York,* 3 Barb. 254; Penn. State R. 175; 15 Barb. 212.

It is urged on behalf of the defendant in error, that the qualification, in the deed, of the site of the street, by plaintiff to defendant, as to the uses to which it was limited, can make no difference as to defendant's liability in devoting the same to other uses, and to the exclusion of the plaintiff and the public, because, if plaintiff had merely made and recorded a plat representing the same parcel as a street, the city would be subject to the same limitations as to use.

To this we say that it is unquestionably true, that in case of dedication by platting, the city would take the title to the street, as trustee for the uses of the public. So here by making the deed, as described by plaintiff, and the acceptance

by defendant, both parties unite in dedicating the site of the street to the public use. 19 Wend. 130; 12 Ill. 38; 7 Ohio, 354; 6 Peters, 437, 507; 8 Dana, 289.

The court will therefore infer, that keeping the street open, and thus securing to plaintiff a perpetual access to her premises, was strictly within the intention of the parties, in making and accepting the qualified grant set out, and such right of easement became and was appurtenant to her premises, and that therefore a covenant on the part of defendant is implied, that plaintiff " should have an easement or right of way in the street, to the full extent of its dimensions." Matter of Lewis street, 2 Wend. 472; 8 Wend. 98; 12 La. Annual R. 541; 1 Hill, 189; 7 Porter (Ind.) 42; 15 Wend. 561.

That the defendant is a corporation which necessarily acts in two different capacities. When it makes ordinances or regulations respecting the public health or safety, then it exercises legislative powers, and acts in the capacity of a political corporation; but when it deals with private persons, in respect to its own real estate, then it is to be regarded as acting as a private company, and subject to the same obligations and duties as the private citizen. *Bank of U. S.* v. *The Planters' Bank of Georgia*, 9 Wheat. 904; *Bailey* v. *Mayor, etc., New York*, 3 Hill, 531, and cases there cited; *Brown* v. *Mayor, etc., New York*, 3 Barb. 257.

But we not suppose that the fact that the *purpresture* of the street complained of, was committed under a pretended ordinance, can make any sort of difference in this case. The city authorities cannot license a private nuisance. Municipal corporations have been held liable for erecting or suffering the continuance of a nuisance in the streets, whereby special damages have been sustained. 15 Barb, 212; 2 Barb. 577.

The law charges upon the defendant the duty of preserving the streets in repair, and preventing encroachments, for a breach of which duty it is liable in an action on the case. *Henry* v. *The Mayor of Lynn*, Regis. 15, Com. Law R. 486; *James* v. *San Francisco*, 6 Cal. 528; *Huston* v. *City of New York*, 5 Sandf. 289; *Rhodes* v. *City of Cleveland*, 10 Ohio, 160; *People* v. *City of Albany*, 11 Wend. 539; *Rochester*

*White Lead Co.* v. *City of Rochester*, 3 Comst. 463; *Pittsburgh* v. *Green*, 22 Penn. 54; *Bond* v. *Hilton*, Busbee N. C. Law R. 308.

Neither is it any objection to this action, that the duty arises out of covenant. *Congor* v. *Rock Island R. R. Co.*, 15 Ill. 366.

B. F. AYER, for The City.

The railroad companies mentioned in the declaration, were authorized by law to bring their roads to Chicago, and to run into the city; and by virtue of the general railway act of 1849, (Scates' Statutes, p. 942,) were also empowered to intersect with each other and connect their tracts.

By the city charter of Chicago, the Common Council have the exclusive power, regulation and control over the streets and alleys of the city, and authority to direct and control the location of railroad tracks.

The fee simple title to the streets is also vested in the corporation. In this case the plaintiff has conveyed by deed, and for any injury to the street, the corporation alone can seek redress. *Canal Trustees* v. *Haven*, 11 Ill. 554; *Hunter* v. *Middleton*, 13 Ill. 54; *Manly* v. *Gibson*, 13 Ill. 308.

Under these circumstances, the city had full power and authority to grant permission to the railway companies to locate a track in front of the plaintiff's premises, and she is entitled to no damages or compensation for such use of the street. *Moses* v. *Pittsburgh, Ft. Wayne and Chicago R. R. Co.*, 21 Ill. 516.

This subject has been carefully considered by this court in the case cited, after a full review of the recent cases in New York and elsewhere. It is therefore unnecessary to multiply authorities on this point. See also *Chicago* v. *Evans*, 24 Ill. 52.

The city charter of Chicago provides that the Common Council shall have power "to exclusively control, regulate, repair, amend and clear the streets and alleys, bridges, side and cross walks, and open, widen, straighten and vacate

streets and alleys, and put drains and sewers therein." Charter of 1851, chap. 4, secs. 4, 54.

The Common Council have power to change the grade of a street after it has been established; they are the judges of the necessity of such an alteration; and the owner of property situated upon the street is not entitled to compensation for consequential damage to his property, or for an alleged obstruction of his right of way, occasioned by such change of grade. *Waddell* v. *The Mayor*, 8 Barb. 95; 4 Durn. & East, 794; 2 Barn. & Cres. 703; 4 Comst. 195; 1 Den. 595; 26 Barb. 133; 15 Missouri, 651; 27 Miss. 397; *St. Louis* v. *Gurno*, 12 Mo. 414; *Graves* v. *Otis*, 2 Hill, 466; *Goszler* v. *Georgetown*, 6 Wheat. 593; *Henry* v. *Bridge Co.*, 8 Watts & Serg. 85.

CATON, C. J. After all, the whole of this case is resolved into this simple inquiry, whether the Common Council has exceeded its legitimate authority, in allowing the railroad track to be laid in Water street, and in raising the grade of Randolph street so as to pass over Water street. If it has not, the law is too well settled to admit of dispute at this day, that the city is not liable for damages resulting from the exercise of such lawful authority.

We have no doubt that the habendum clause of the deed, by which the plaintiff conveyed a portion of Water street to the city, for the purposes of a street, and none other, restricts the use of the premises to that of a street alone. But they have no right to use any of the other streets of the city, for purposes other than those of streets. Their power over this, is the same as over any other street—neither more nor less. Then the question recurs, what is the legitimate use of the street by the Common Council? That too, is well settled. It is the settled law of this court, as well as in most of the other States of this Union, that it is a legitimate use of a street or highway, to allow a railroad track to be laid down in it, and for doing so, the city is not liable for any damages which may accrue to individuals. Cases are constantly occurring where individuals are incommoded, and thus really damaged, in this

way, for which the law can afford no remedy. Sometimes portions of a street are occupied by building materials, to the great inconvenience of a neighbor, but he must submit to it from necessity, and without compensation.

So, too, of the complaint that the grade of Randolph street has been raised at the crossing of Water street, so as to preclude passage from one to the other except by a flight of stairs. The grade of streets is within the exclusive control of the Common Council, and the law is well settled that individuals who are discommoded thereby, must submit, without compensation, to such improvements for the general good. The grade of the streets in a large portion of this very city, has been so raised as to compel proprietors to raise their buildings at a very great expense; but we have decided following a rule well settled elsewhere, that the city may do this without compensation to the owners of property upon the street. It seems to us that all the principles involved in this case, have been long and well settled, and we can have no difficulty in arriving at a satisfactory conclusion. Indeed, it is impossible to arrive at but one conclusion, without overturning principles of law long settled and well established.

We must affirm the judgment.

*Judgment affirmed.*