State, Montgomery et al., Pros., v. Inhabitants of Trenton.

THE STATE, MONTGOMERY ET AL., PROSECUTORS, v. THE INHABITANTS OF THE CITY OF TRENTON.

1. The common council of the city of Trenton have no authority under the general power to regulate streets, to grant to an individual license to lay a railroad track across the public street for his own use.
2. Streets and highways are intended for the common and equal benefit of all citizens, to which end they must be regulated.
3. *Certiorari* will not lie in favor of the prosecutors, who have sustained no damage peculiar to themselves.

On *certiorari* to review and set aside an ordinance, &c.

Argued at June Term, 1872, before Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the plaintiffs, *J. R. Emery* and *G. D. W. Vroom.*

For the defendant, *E. T. Green.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The common council of the city of Trenton, on the 12th of March, 1872, passed the following ordinance, viz.:

"An ordinance to authorize Benjamin Fish and George S. Green to construct a railroad track across West State street, from the canal to their land at the waste weir.

"The Inhabitants of the city of Trenton do ordain :

"Section 1. That the consent of the city of Trenton is hereby granted to Benjamin Fish and George S. Green to construct and operate a railroad track for the passage of logs and other lumber across West State street, from the feeder of the Delaware and Raritan Canal to the land of Fish and Green, on the southerly side of said street, adjacent to the waste weir; *provided*, that the said track shall be constructed upon the present grade of West State street, and that the laying and construction of said railroad track shall be subject to the supervision and approval of the street commissioner of the city of Trenton, and that said railroad shall be so operated and maintained as not to interfere with the travel on said street; *and provided further,* that nothing herein contained shall permit the said Fish and Green to construct and operate said railroad without the consent first had· and obtained of the lot owners fronting on that part of said street on which the said railroad track is to be constructed and maintained; *and provided further,* that whenever the common council may consider the said railroad incompatible with the public interests, they may order the same to be removed.

"Section 2. That this ordinance shall go into effect so soon as the said Fish and Green shall have, at their own cost and charges, caused the same to be published five consecutive times in two of the daily newspapers in this city.

"R. C. BELVILLE, *President."*

The lot of Fish and Green, with which the connection is proposed to be made, as the case shows, runs only to the westerly line and not to the middle of the street.

The prosecutors, who are land owners and residents on West State street, deny the power of the common council to pass said ordinance.

The grant is to construct and operate a railroad for the private uses of Fish and Green, upon and across a public street, without restriction as to the motive power to be used,

the sole limitation being that it shall be so operated and maintained as not to interfere with travel.

Under a strict interpretation of this condition the road could not be built, for the track would be an appreciable obstruction, but in order that the grant may be effective, a reasonable construction of the ordinance will be that the work must be so done and maintained that no unnecessary interference with the public use of the street ensues.

The common council of the city of Trenton has no power over streets other than that conferred by the city charter, and therefore unless authority can be found in the corporation act for granting the privilege in question, the ordinance must fall.

The defendants rely upon title III, § 25, subdivision 7 of the city charter, (*Laws,* 1866, *p.* 373,) which provides " that the common council shall have power to regulate, clean and keep in repair streets, highways, &c., in said city, and to prevent and remove obstructions, &c., and to prescribe the manner in which corporations or persons shall exercise any privilege granted to them in the use of any street, avenue, highway or alley in said city, or in digging up any street, avenue, highway or alley for the purpose of laying down pipes or any other purpose whatever."

The power to prescribe the manner in which corporations or persons shall exercise any privilege granted to them in the use of any street, if held to apply to privileges given by legislative enactment, cannot affect this controversy, and if to privileges granted by the common council, it must be interpreted to mean such privileges as may lawfully be granted.

The prosecutors claim that the railway, if constructed, will be a nuisance. But no structure which has the sanction of lawful authority can be a nuisance. The result could flow only from doing an act unauthorized and illegal. If the ordinance in question is not in excess of corporate power, it is a legitimate exercise of such functions as may be delegated to municipal governments, and is beyond the control of judicial interference.

State, Montgomery et al., Pros., v. Inhabitants of Trenton.

In *Milhau* v. *Sharpe*, 15 *Barb.* 193, the corporation of New York, without other authority than that contained in the general power to regulate streets, conferred upon the defendant and his associates power to lay a railway in Broadway.

This grant was sustained on the ground that it was in the nature of a public use and conducive to the public good, and did not interfere with the complete and unrestricted use of the highway.

In the same case reported in 17 *Barb.* 435, it was declared that the right to make a grant of that nature without the power of revocation was not within the powers conferred upon the common council; that it was not a legislative act regulating the use of the street, but a grant of the use itself to the extent specified, whereby they divested themselves of absolute control over the street, and became disabled to discharge the important public trust reposed in them. Thereafter instead of regulating the highway in the full and complete manner designed by their charter, they would exercise their control in subordination to the franchise they themselves had granted. They would thus manifestly, to the extent of the grant, give up the use of the public way, and surrender a portion of their municipal authority.

In the later case of *Davis* v. *The Mayor of New York*, in the Court of Appeals, reported in 14 *N. Y.* 506, the court ruled (Denio, C. J., delivering the opinion,) that it was not competent for the corporation of New York city to authorize the laying of a railroad track in the streets, on the ground that it was not properly within the idea of regulating highways, but was converting them into a means of transportation with which the existence of a street had no natural or necessary connection within the purview of the city charter. In most of the cases on this subject there has been a legislative grant, coupled with the municipal authority. *Murphy* v. *Chicago*, 29 *Ill.* 279; *Lexington and Ohio R. R.* v. *Applegate*, 8 *Dana* 289; *Chapman* v. *Albany and Sch. R. R.*, 10 *Barb.* 360; *Adams* v. *Saratoga R. R.*, 11 *Barb.* 414; *Williams* v. *N. Y. Central R. R.*, 18 *Barb.* 222.

In all the cases in which the grant of power is recognized, it is rested upon the same principle on which, in this state, we have declared that a horse railway was a legitimate use of a highway ; that is, that it is merely a new mode of using the highway, and that it does not burden it with a new servitude inconsistent with the purposes for which it was originally appropriated to the public. It is true that in these cases the right of the adjacent land owners to compensation was an element which does not enter into the case certified here, but independent of that consideration, the municipal power under the warrant to regulate streets, was restricted to such uses as are public, or in the nature of public uses.

Keeping in view the rule which governs these cases, it will not be necessary to consider whether, in this state, a municipal corporation may, under the power to regulate streets, grant authority, without the concurrence of express legislation, to lay and maintain a horse railway in the public streets. If it may, it can be only for the reason that such use is not incompatible with the purposes for which the highway was devoted to the public, and that it will promote the common convenience, and is therefore an appropriate regulation of the street. I do not concede the existence of this power.

It has never, so far as I can ascertain, been exercised in this state, and the attempt to assert it would doubtless provoke the most determined resistance.

Every thing which is fairly within the idea of regulating streets, with a view to their use as streets, may be done by corporation legislation. In measuring the extent of the power, the object and purpose for which it was given must always be regarded as the test.

Is one of those objects or purposes subserved by permitting one individual to enjoy a use of the highway which is denied to all others? I think not. If such power is conceded, its exercise is limited only by the discretion of the common council, who must be the sole judges of the extent to which obstructions may be placed in the streets. If they can license one to build a railroad across the highway for his

own exclusive benefit, of which the public can have no user or advantage of convenience, it is difficult to perceive why they cannot empower another to place therein a structure which will more effectually impede the public passage, and maintain it there during their pleasure.

How considerable must the obstruction to the way become, before the judgment of the common council can be controverted, and the judicial arm interposed?

A grant to every one on the street, of a like nature with that now resisted, would render the highway well nigh impassable. The right to license one necessarily implies authority to license all, and thus municipal corporations, under the general power to regulate streets, become the source from which franchises to favored individuals, in the public ways, derive their existence.

Streets and highways are intended for the common and equal use of all citizens, to which end they must be regulated. An appropriation of them to private individual uses, from which the public derive no convenience, benefit or accommodation, is not a regulation, but a perversion of them from their lawful purposes, and cannot be regarded as an execution of the trust imposed in the city authorities.

In *Wilson* v. *Cunningham et al.*, 3 *Cal.* 241, the defendants, while running their cars for their own private gain over a railroad laid down in the streets of San Francisco, under license from the common council, collided with the plaintiff's wagon. The plaintiff sued for his damages. Although no question was raised by the pleadings, as to the right of the defendants to run their cars, the court below refused to charge the jury, "that if the defendants were running their cars with ordinary care, as they had a right to do, under the permission given them, they could not be held liable in that action." The Supreme Court affirmed the judgment, which was for the plaintiff below, on the ground that by the special license to a private person, for his own benefit, the street was diverted from its ordinary and legitimate use, and therefore

the defendant, in operating his road, must be required to use extraordinary care.

The power of the common council, to permit owners of stores or other buildings to erect awnings over streets, or to leave boxes on the sidewalks, under certain regulations, rests upon a different principle, and has been sanctioned by usage as the exercise of a right in the owner of the fee, not inconsistent with the public right of passage.

So custom has sanctioned the laying of gas and water pipes, as entirely accordant with the primary use of the highway, but even this is done under legislative authority.

In my opinion the ordinance certified is unauthorized and void, and any railway constructed under it would be a public nuisance.

But this result does not give the prosecutors the right to invoke the aid of this court, by the writ of *certiorari*, to set aside the illegal proceeding. Even after the projected work was completed, they could not maintain an action for the damages they might sustain in common with other citizens; they could have a private remedy only for such injury as was peculiar to themselves.

The mere fact that the common council have acted in excess of their power, affects the relators in common with other citizens, but in no way peculiar to themselves. No right of action can accrue to any one of the prosecutors, until he sustains some special injury. The rule of the English courts, that for the usurpation of authority by public bodies, the remedy, until the passage of their municipal corporation acts, was exclusively in the name of the attorney-general acting in behalf of the public, and that the individual had no redress until his person or property was affected by enforcement of the illegal proceeding, has been so far modified by judicial decision in this state, that the tax payer may resort to *certiorari* for his protection against an illegal ordinance or resolution, without waiting until the assessment is actually imposed. *State* v. *Jersey City*, 5 *Vroom* 390; *State* v. *Paterson*, 5 *Ib.* 163.

In these two cases the prosecutor would have been directly affected in his property by the enforcement of the illegal proceeding. In the later case of *The State, Kean, Pros.*, v. *Bronson*, 6 *Vroom* 468, it was held that the relator, by reason of his being a property owner and tax payer within the corporation, had no legal right to question the proceedings of commissioners, in putting in sewers and paving streets, unless he could be called on to contribute to the expenses of the improvement.

Accepting, as I feel constrained to do, the limitation of the rule as adopted in this last case, I am of the opinion that the writ now pending must be dismissed with costs.

CITED in *Ferry* v. *Williams*, 12 *Vr.* 332 ; *Gloucester Land Co.* v. *Mayor*, &c., 14 *Vr.* 544 ; *Staates* v. *Borough of Washington*, 15 *Vr.* 605 ; *Jersey City Gas Co.* v. *Dwight*, 2 *Stew. Eq.* 242.