## THE STATE v. JAMES WILSON.

*Eminent Domain—Constitutional Law—Municipal Ordinance—
Police Regulation.*

The authorities of the town of S., in the exercise of their powers and
duties to keep in proper condition the streets in the town, caused
a water-way to be constructed through the lands of the defendant,
resulting, on several occasions, in the flooding of his premises.
There had been no condemnation of the land or other acquisition
of the right to the easement. The defendant placed an obstruc-
tion in the water-way, but on his own land, by which a street was
flooded and made insecure: *Held*, that whatever civil remedy the
defendant might have against the municipality for damages result-
ing from the appropriation and injury of his lands, he had no right
to obstruct the water-way and thereby imperil the safety and con-
venience of the public, and that he was properly convicted for the
violation of an ordinance prohibiting such obstruction.

This was an indictment for a violation of an ordinance
of the city of Statesville, tried on appeal from the court of
a Justice of the Peace, at August Term, 1890, of the Supe-
rior Court of IREDELL County, before *Bynum, J.*

The affidavit and warrant charged that the defendant
"did, on the 16th day of August, 1889, wilfully, with force
and arms at and in the said city, dam up and obstruct the
water way and the flow of water from the south side of
Walnut street, between Race street and Oak, in violation of the
ordinances of the said city passed July 2d, 1888, chapter 40,
Acts 1885, contrary to the form of the statute in such cases
made and provided, and against the peace and dignity of
the State."

The ordinance is as follows:

"Ordered, by the Board of Aldermen of the city of States-
ville, that no person shall place any obstruction in any water-
way so that the water shall accumulate in any street, or in any

manner obstruct the flow of water through or from any street of the city of Statesville, whether such obstruction be placed on his own property or that of another, and anyone so offending shall be fined fifty dollars."

On the trial the State introduced evidence tending to show that Walnut street had a ditch running along the south side of it; that there was a ditch and water-way from the south side of the street into and across the lot of the defendant and across the lot of G. W. Clegg to Front street; and that defendant, in the month of August, 1889, stopped up said ditch by placing therein stakes, plank and dirt so as to dam up the water on Walnut street for one week, making the street wet and muddy; that before defendant obstructed the ditch and water-way it carried the water from Walnut street to Front street, thence to a branch and out of town. It was admitted by the State that the obstruction was put in the ditch by the defendant on his own land, under his fence, etc.

The defendant introduced evidence tending to show that there was no water-way or ditch crossing his lot, and if there was, it was not of sufficient capacity to carry the water that ran in from Walnut street, but ran the water into the lot of defendant from Walnut street without any or a sufficient outlet.

Defendant introduced A. M. Walker, who stated that he was seventy-six years of age, and had lived in Statesville fifty-six years; was Town Magistrate in 1843, and continued to be for five or six years; was Mayor in 1854–'55–'56; after this superintended street work up to within eight or ten years ago; laid off Walnut street. Defendant proposed to ask witness whether, from the time he knew the town up to within eight or ten years ago, the town or city of Statesville had made any water-way at the place where the alleged obstruction was done by defendant. This was offered for the purpose of showing that the town had not run the water

through the land of defendant long enough to acquire an easement, and the defendant proposed to follow this evidence by showing that the town had not condemned the lands where the obstruction was for a water-course for the water running from Walnut street; and that he nor those under whom he claims had ever granted a right-of-way on his land for the water from the town.

Objection by State. Objection sustained. Exception.

Witness stated that the water always ran north when he knew it; across Wilson's lot is south. The last he remembered it running north was about '78. Walnut street was raised so as to keep the water from running north.

Defendant proposed to prove by witness that the natural flow of the water was north, in the opposite direction from the obstruction, and that it had been running that way up to 1878. Objection by State sustained. Exception by defendant. Defendant then proposed to ask witness if the home of Wilson was not near this water—to be followed by evidence that the water coming in created a private nuisance in Wilson's lot, and that the obstruction was made to keep out the water and to abate this nuisance. Objection by State sustained. Exception by defendant.

Defendant, in his own behalf, stated: "In August, 1889, water came in from Walnut street; flooded the lot; had no outlet; backed in my cellar; it had to get a foot or more deep in the lot before it would run off; the lot adjoining was higher than mine; there has been some ditching done lately; there was no way for the water to flow out until it filled up enough to run out; I filled in the obstruction on my lot; there was no ditch there then to take the water off; there was an opening under my fence from Walnut street in August, 1889—been there since July, 1888; I had that opening closed up, and the water backed in the street; the water was running in that opening when I bought the lot;

there has been sort of a ditch from Walnut street to Front street through my lot and Clegg's lot."

There was much other evidence introduced as to the location of the street and existence of the water-way.

At the close of the evidence defendant asked the Court to instruct the jury: That a water-way, within the meaning of the ordinance, is such a channel as will conduct the water not only out of a street upon an adjoining lot, there to stand, but carry it off to some drain by which it can escape from the corporation, and if the jury are not fully satisfied, from the evidence, that defendant had such channel, they should acquit.

Drainage must conform to natural laws; water, by natural law, descends, and if a proprietor protects his land against surface-water by embankment, or erecting an obstruction which throws water back into the street, he is not indictable unless the land thus protected is lower than the adjoining lands, and is the natural drainage for the town at this point.

The Court refused the second instruction asked, and told the jury that the questions for them to determine were—

1. Was there a water-way as alleged by the State?

2. If yes, did the defendant obstruct the same?

That it did not matter whether the water-way was of sufficient capacity to carry off all the water from Walnut street, or whether water ran out of it on the land of the defendant, but was it the water-way provided by the city? That if the jury found that this was the water-way, and that defendant obstructed it, he was guilty. If, on the contrary, they found that there was a ditch made by the city along the side of Walnut street, and a ditch cut from that into the lot of the defendant, which turned the water into his lot, with no ditch across it and into the land of Clegg, and thence on to Front street, it would not be a water-way within the meaning of the ordinance, and defendant would not be guilty, even if he had stopped it up or obstructed it.

Verdict of guilty. Motion for new trial overruled. Defendant appealed.

*The Attorney General* and *Mr. R. H. Battle* (*Messrs. Furches & Coble* and *C. H. Armfield* filed briefs), for the State.

*Messrs. John Devereux, Jr.,* and *W. M. Robbins,* for defendant.

AVERY, J.: When this case was brought up by the defendant (106 N. C, 718) on appeal from the refusal of the Court below to quash the warrant, it was settled that the ordinance was valid, the town having authority, both under the general statute (*The Code,* § 3820) and the charter (Pr. Acts, 1885, ch. 40, § 56), to make and enforce it. The question whether such an obstruction of the flow of water from the street is indictable as a public nuisance, and cognizable in the Superior Court, is, therefore, no longer an open one.

The statute (*The Code,* 3803) makes it the duty of the town, through its regularly constituted authorities, to "provide for keeping in proper repair the streets and bridges of the town, in the manner and to the extent they may deem best." The commissioners of the town, during the year 1878, thought it would promote the convenience and subserve the best interests of the public to raise the level of the street adjacent to the premises of the defendant, on which he placed the obstruction complained of, and on which he now lives, one foot higher by filling in earth; but by doing so the water that gathered just south of the street so repaired (Walnut) was, as the defendant insisted and proposed to prove, diverted from its natural course, and, instead of flowing across the street to the north, was forced into his lot, and ponded to the depth of a foot on a portion of it before it could be made to pass into a little drain, and across his premises to a branch on a parallel street further south.

We must assume that the authorities of the town acted in good faith, if not in obedience to the mandatory requirement

of the statute, in changing the level of Walnut street, and made only proper repairs in that highway. They were liable to indictment for failure to keep it in such condition that it would be passable and safe. · Bishop on Cont. Law, §§ 970 to 974.

The town had an unquestioned right-of-way in Walnut street when it is alleged that the flow of the water was changed. How or when the easement was acquired does not appear, but the existence of it is admitted. If the town ·had widened instead of elevating the street, the additional land needed for that purpose could not have been taken for public use without condemnation, in some manner provided ·by law, and giving just compensation to the owner. Under the charter now in force in Statesville (Laws 1885, ch. 40, § 41), the mode of ascertaining damages is provided and specifically pointed out.

In a late exhaustive work on Eminent Domain, by Lewis (§ 221), the author says that the people of Illinois, in revising their Constitution in 1870, inserted a new and important provision—that "private property should not be taken or damaged for public use without just compensation." He says further: "Every other State which has revised its Constitution since 1870, except North Carolina, which never had any provision on the subject, has followed the example set by Illinois by adding the word 'damaged,' or its equivalent, to the provision in question," viz., to the pre-existing prohibition against taking without just compensation. The fifth amendment of the Constitution of the United States was held, at an early day, to be a limitation on the power of the Federal and not the State government. *Barrow* v. *Mayor of Baltimore,* 7 Peters, 243.

Judge GASTON, in *Railroad* v. *Davis.* 2 Dev. & Bat., 460, intimated strongly that section 17, Art. 1 of the Constitution, should be construed as prohibiting the appropriation of private property for public purposes without payment of a fair

equivalent; but the statute discussed in that case provided fully for ascertaining and paying the damage of the land-owner for the land appropriated, and hence the point was not decided. Our Constitution has never contained, however, like most of the other State Constitutions, such an express inhibition as that imposed on the Congress of the United States against taking private property without just compensation. Where the word "damaged," or some word of similar import, has been added to "taken," in the organic law of various States, the Courts have held that the effect was to give to the owner of the fee in the street the right to additional damage when the streets are elevated. Lewis on Em. Dom., §§ 222 to 224 and 232.

But while our organic law may be construed to prohibit "taking," its language is not broad enough to apply in all cases where, as an incident to the construction or change of a street, an owner of adjacent land is injured by diverting the water and flooding his premises or by rendering his building insecure. No provision is made in the general road laws, or in railroad charters or in acts incorporating towns, as a rule, for compensating land-owners who are not owners of the fee-simple title to any part of the highway, railroad or street, or whose lands do not abut immediately on them, because of injuries inflicted incidentally on land other than that appropriated or contiguous to it, the corporation can, ordinarily, be made to answer in damages. If it were necessary to determine in this case whether the defendant's damage, on account of ponding water on his land, could be recovered only in repeated actions against the city, or whether it is deemed, in the absence of any special provision in our statutes or constitution in reference to *injury*, as distinguished from *taking*, to have been assessed when the street was opened, it might become important, if not essential, to first ascertain whether the flooding was caused by failure of the town to furnish a sufficient outlet

by a natural or artificial drain for a stream, or for the escape of the accumulated surface-water, and also, whether the defendant, or those under whom he claims, owned any part of the highway when it was condemned, granted or dedicated. *Railroad* v. *Wicker,* 74 N. C., 227; *Brown* v. *Railroad,* 83 N. C, 128; *Bridgers* v. *Dill,* 97 N. C., 222; *Fore* v. *Railroad,* 101 N. C., 527; *Emry* v. *Railroad,* 102 N. C., 234; *Murphy* v. *City of Chicago,* 29 Ill., 279.

But we do not think it essential that we should determine what the remedy of defendant is, if he *has* a remedy. The ordinance has been declared valid. It prohibits the obstruction of a city drain. The defendant admits that he obstructed the flow of the water when it entered his lot.

The Judge below, in his charge, made the guilt of the defendant depend upon the preliminary finding by the jury that the obstruction was placed in a drain or ditch used by the city. It is not material, therefore, to know whether an action will lie or not, since the city was shown to be using the ditch. The defendant cannot, without making himself liable to indictment, take the law in his own hands, declare the flooding a nuisance, and abate it in such manner as is calculated to render the street impassable, even if it be conceded that the water was diverted and made to flow into the ditch for the first time in 1878, and that the way for the ditch was not condemned nor compensation made for prospective damage to the owner of the land, and that no easement has yet been acquired by the town in the water-way. *Owings* v. *Jones,* 9 Md., 108; *Nayes* v. *Shepherd,* 30 Me., 173. "No person, not even the adjacent owner, whether the fee of the street contiguous to his lot be in himself or the public, has the right to do any act which renders the use of the street hazardous or less secure than it was left by the municipal authorities." 2 Dil. Mun. Corp., § 1032.

The defendant had no right, by obstructing a drain actually used to carry off the water, to flood the streets, and was liable to respond in damages for any injury caused by creating such a nuisance. 1 Dillon Mun. Corp., § 379; 2 *ibid*, 1032

So far from having the right to abate what he considered a nuisance by closing the ditch, the defendant, if in backing the water upon the street he made the highway unsafe, subjected himself to certain liability to indictment and a contingent responsibility in damages for injuries to others caused by his act.

It is not necessary to discuss *seriatim* the exceptions of the defendant. The principles we have laid down cover all of them.

There was no error in excluding the testimony, for the refusal to admit which exceptions were entered; nor is there sufficient ground for sustaining any of the exceptions to the charge that have been assigned as error.

Affirmed.