STATE v. NEW.

(Filed June 19, 1902.)

OBSTRUCTING JUSTICE—*Public Officers—Highways—The Code,*
  *Secs. 2025, 2027, 2040—Acts 1899, Chap. 581.*

   Where a person obstructs an overseer in cutting a ditch across
      his land to drain a public road, he is not guilty of obstruct-
      ing justice, there being no provision of law for taking pri-
      vate property for this purpose and the payment of just com-
      pensation therefor.

FURCHES, C. J., and CLARK, J., dissenting.

INDICTMENT against Wesley New, heard by Judge *W. A.
Hoke* and a jury, at April Term, 1901, of the Superior
Court of SAMPSON County.

This is a criminal action for the obstruction of a public
officer in the discharge of his duty, tried before Judge W. A.
Hoke.

The evidence showed that the defendant was the owner of
two and one-fourth acres of land, all cleared, fenced and un-
der cultivation.

The public road leading from the corporate limits of Clin-
ton, at the Barden House to Stevens Bridge, and that E. C.
Williams was the overseer of said section, duly appointed and
acting. That in January, 1901, said oveseer, with his hands,
were working his section. That in the public road, on the
outside of defendant's fence, there was a basin or low place
in the road; that in wet times, when there was over the ordi-
nary rainfall, the water from this basin overflowed through
defendant's field into a basin similar to this one in the road,
and from defendant's field the water flowed only in extra
wet times to another basin on Draughan's lands, the adjoining
landowner, which was uncleared. The defendant News'
field was 70 yards wide at this point; that near the back fence

from the road was the lowest place in defendant's field; that the defendant was in his field with the iron scabbard to a sword beating down cotton stalks, when the overseer ordered his hands to enter the field; that the defendant forbade the overseer and hands to enter. They did enter, and passed to the low place near the back fence. At this point, about 70 yards from the road, E. C. Williams, overseer, ordered his hands to begin cutting a ditch, intending to cut it to the basin in the road to dry the water off the road and into defendant's field. Defendant again forbade both overseer and hands.

The overseer then told defendant he intended to cut the ditch any way. Defendant stuck the scabbard into the ground and said to the overseer:

"Not unless you do it over my dead body."

The overseer then ordered his hands to stop, and they did so. The evidence showed the road to have been a public road for 60 years, and at this point there were fences on both sides of the road, 22 feet from each other. That in very cold weather in winter the ice on this water would bear a team and loaded wagon. That the water was from 4 to 6 inches deep in the basin, and about 40 yards long. That it was not boggy, and was passable at all times, but when the ice was very thinck was dangerous, on account of the teams slipping on the ice. That defendant purchased the 2 1-4 acres from John Dickson, who bought it from Walter Draughan and cleared it up. That before Dickson bought it, and while it was in the woods, the overseer of the road had cut a trench about four inches deep into the woods to dry this basin, which trench was cut by the overseer along the natural drain for the water, this being the only natural drainage to the basin in the road.

The defendant, through his counsel, requested the Court to instruct the jury that the overseer had no legal authority to enter defendant New's field to cut a ditch, to dry this basin,

and such entry, after being forbidden by New, was a trespass if made by the overseer. That under all the evidence the defendant was not guilty. That no proceedings having been shown to condemn that part of defendant New's field, defendant was not guilty for resisting the trespass of the overseer. That defendant had a right to resist a trespass such as this, and was not guilty. The Court instructed the jury that it was a misdemeanor to obstruct a public officer in the discharge of his duty. This obstruction must be wilful. If the evidence was believed, a public officer, an overseer of a public road, was obstructed. That if it was necessary to the safety of persons and teams passing over this road to relieve the roads of this water, and if the natural drain of the water was through defendant's field, then the defendant would be guilty, if the overseer entered the field only for the purpose of cutting the small drain to relieve the road of the water, and if this was necessary for the safety of passengers.

This, however, can only be done by the overseer from necessity to relieve the road, and make it safe for travelling. If the overseer entered for such purpose, and under such necessity, then he would be in the proper discharge of his duty, and defendant would be guilty. If, however, there was no present necessity to relieve the road, and it was not the natural and proper drainage way, and it was not necessary to relieve the road, the defendant would be not guilty. Then the overseer would be a trespasser, and defendant had a right to obstruct him.

The State contends that there was ice in the basin, and this threatened the safety of travellers; that the overseer attempted to drain the water off to relieve the road. That it was necessary to relieve it; that this was the only practicable way to relieve the road; that the road always has been relieved that way.

The defendant contends that there was no ice there then,

that there was no natural drainage-way to this basin, that to drain it on defendant's lands would ruin his crops. That defendant would have to cut a ditch 400 yards through Draughan's land to relieve his field; that the overseer could cut a ditch two feet deep, 35 yards long, on his own land, and relieve the road of all water; that no former overseer had cut a ditch into this field; that when the lands were woods, then if a trench had been cut this would not now give the overseer a right to cut this ditch.

The defendant, in apt time, objected to that part of the Court's charge which in substance said: If there was a present necessity to relieve the road, and if the overseer entered the field for this purpose, he would be in the proper discharge of his duty, and the defendant would be guilty; objection overruled, and defendant excepts. The defendant excepts because the Court refused the instruction prayed for by defendant.

From a verdict of guilty and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*John D. Kerr,* for the defendant.

DOUGLAS, J., after stating the case. It is evident from the above statement of the case on appeal that there was no natural drainway for the basin in the road across the land of the defendant. Natural drainage is where water runs in a state of nature without artificial assistance. The mere fact that it would require the digging of a ditch seventy yards long to carry the water on to the defendant's land, would show that it did not go there naturally. Even then it would not reach a natural watercourse, nor even an artificial waterway, but would be turned loose in a low place upon the defendant's land, to his manifest injury. He would be compelled to let it lie there, ruining his crops and destroying the value of

his land, or dig another ditch four hundred yards long through the land of another man. It seems that the overseer could have relieved the road of all water by cutting a ditch thirty-five yards long and two feet deep through his own land on the opposite side of the road, but he preferred to dig seventy yards of ditch upon another man's land than thirty-five yards upon his own land. In this he showed fine business sense, but has he the right to thus appropriate the land of another, without compensation, and, as far as we can see, without authority of law? We all know that a ditch is always more or less of a nuisance. It is frequently a necessary nuisance, but a nuisance none the less. It divides a field so that a man can not get from one side to the other without building bridges or ruining the ditch. It takes up not only the land occupied by the ditch itself, but generally much more with its banks and the weeds and briers that always grow on ditch banks. It is true these banks can be kept clean, but this requires much additional labor and expense. It thus appears that digging a ditch through the land of another is not only an appropriation of a certain part of the land, but is a direct injury to the remainder. Suppose the overseer had dug this ditch, how would the defendant have obtained compensation? No way has been called to our attention, except an action for the trespass, and this it would be difficult to maintain if the overseer had a right to cut the ditch. If he had no right to cut it, the defendant is not liable to indictment for stopping him.

There is no authority either for entry or compensation under Chapter 581, of the Public Laws of 1899, because Section 27 thereof expressly provides that this act shall not apply to Sampson County, and there is neither proof nor allegation that Sampson County has adopted said act, or any part thereof, even if it could lawfully do so. The only sections in The Code that we find applicable to the question are 2025, 2027

and 2040.    Section 2025 provides that "Where, by the over-
seers, it may be deemed expedient to make or repair cause-
ways on the same, they shall be at least fourteen feet wide;
and earth, necessary to raise or cover them, shall be taken
from either hand, so as to form a drain on each side of the
causeway."

Section 2027 provides that "Overseers may lawfully cut
poles and other necessary timber for repairing and making
bridges and causeways.    And whenever earth shall be needed
on a public road, and it can not be conveniently procured on
either side of the causeway, the overseer may lawfully take
the earth from any adjoining land."

Section 2040 is as follows: "All roads shall be laid out by
a jury of five freeholders, to the greatest advantage of the in-
habitants, and with as little prejudice as may be to lands and
enclosures; which laying out, and such damage as private
persons may sustain, shall be done and ascertained by the
same jury on oath; and all damages by them assessed shall be
deemed a county charge."    Nowhere do we find any author-
ity for cutting ditches into private property.    On the con-
trary, it clearly appears that The Code contemplates the
filling up of such slight depressions, and their drainage by
lateral ditches on the side of the highway.

In the present case, the standing water, when it stands at
all, is only from four to six inches deep.    This could easily
be filled up, either with rock and dirt, or by cross-laying with
poles and piling dirt on them.    This would permanently
remedy the evil at little expense, and injure no one.

It would be an intolerable nuisance to permit every road
overseer, in his unbridled discretion, to cut ditches through
private property, whenever and wherever he saw fit, simply to
drain mud holes in a road that he could easily fill up.    If the
highway were so located as to be absolutely incapable of
drainage without draining through private property, it could

be relocated; and perhaps an additional easement acquired, under Section 2040 of The Code, but no such question is before us.

The appropriation of private property to public uses has been so recently and so fully considered at this term in *Phillips v. Tel. Co.*, *Mullen v. Canal Co.*, and *Rice v. Railroad*, as to require but little further comment. It is well settled that private property can not be taken, even for a public use, without express legislative authority and the payment of adequate compensation. Any other appropriation would be in violation of the Declaration of Rights in the Constitution of North Carolina, and of the Fourteenth Amendment to the Constitution of the United States. *Cornelius v. Glenn*, 52 N. C., 512; *Johnson v. Rankin*, 70 N. C., 550; *C., B. and Q. R. Co. v. Chicago*, 166 U. S., 226.

That this is the rule in other jurisdictions, is shown by an examination of the authorities. In Gould on Waters, the author says, in Section 271: "An owner of land has no right to rid his land of surface water or superficially percolating water, by collecting it in artificial channels and discharging it through or upon the lands of an adjoining proprietor. This is alike the rule of the common and civil law; and a municipal corporation has no greater right in this respect than a private landowner." In support of this proposition, the learned author cites a long line of authorities from Indiana, Minnesota, New York, Maryland, New Jersey, Massachusetts, Colorado, Georgia, Pennsylvania, Illinois, Nebraska, West Virginia, Missouri and Wisconsin. In Lewis on Eminent Domain, the author says, in Section 87: "* * * Causing water to flow upon land is a clear violation of the right of exclusive occupation and enjoyment, which can not be taken or interferred with without compensation." And again, in Section 103: "*Nevins v. City of Peoria* (41 Ill., 502),

STATE *v.* NEW.

89 Am. Dec., 392, is a leading case upon this question. The city of Peoria graded its streets in such a manner as to cause a stream of water and mud to flow on to the plaintiff's property in times of rain, and also to cause a pond to accumulate upon adjacent property, which, by becoming stagnant, diffused unwholesome vapors over the plaintiff's premises. The city was held liable on the ground that the damages complained of were a taking, within the meaning of the Constitution. It was held that the city had no greater power over its streets than a private individual had over his own land, and that the law of adjacent proprietors was applicable. This is the true rule to be applied in all such cases." Preventing the digging of an unauthorized ditch and obstructing an existing ditch whereby the highway is flooded are essentially different.

Another interesting view is presented by this case: Suppose the plaintiff should sue the county for compensation, and the county should repudiate the act of the overseer as unauthorized, what remedy would he have? This Court has said that he can not sue the county for a tort. Shall it now say that he is indictable if he attempts to prevent a tort? Surely one of two things must be true—either the overseer has no right to cut the ditch, or the county must be held responsible for his act.

For misdirection of the jury by his Honor in the Court below, a new trial is ordered.

New Trial.

FURCHES, C. J., dissenting. The case on appeal states that one Williams was the overseer of a public road in Sampson County, and the defendant is an adjacent landowner to said road; that said road has been located where it now runs for at least sixty years; that by long use the bed of the road had become worn, so that in wet weather the water would stand in

the bed of the road from four to six inches deep, for a distance of forty yards; and in cold weather this sheet of water would freeze, so as to bear the weight of a horse or wagon, and was dangerous.

The evidence showed (and that question was submitted to the *jury*) that the natural flow of the surface water at this point was on the defendant's land, and when the bed of the road was full of water, it flowed off on the defendant's land; that at one time there had been a small ditch cut on the defendant's land to aid in draining this worn and sunken place in the road, but this was while the land was in the woods and before the defendant bought it.

I thought it settled law of this State that you could accelerate, but not divert surface water. *Mizzell v. Gowan,* 129 N. C., 93.

The country being flat, it would take a ditch some seventy yards long to drain, and keep drained, this depression in the road. And for the purpose of so draining the road, Williams, the overseer, with the hands working the road under him, got over the defendant's fence for the purpose of digging the ditch, when the defendant forbade their doing so; and upon the overseer insisting on cutting the ditch, the defendant said if he did "it would be over his dead body," and, to avoid a personal difficulty with the defendant, the overseer desisted and did not cut the ditch. And the defendant is indicted for obstructing a public officer in the discharge of a public duty.

It was admitted that the overseer was a public officer, and that working the public road was a public duty. But the defendant contends that the overseer had no right to cut a ditch on his land, if it was done in the discharge of a public duty and for the public good; that this would be a taking and appropriating his land without any authority to do so, and without any compensation, which would be in violation of

his constitutional rights. As the natural drainage of the water from this depression in the road was over the defendant's land, it was *servient* to the road, and the defendant could not obstruct and prevent the water from flowing over the same, although there had been no condemnation of his land. *State v. Wilson,* 107 N. C., 865—very much in point. But the road having been established for sixty years or more, worked and kept up all this time as a public road, it must be presumed to have been established according to law, and the defendant (or those under whom he holds) to have been compensated—paid for the right to locate the road and the damage it might do to the servient tenants. This is so in contemplation of law, if not in fact.

I am not in favor of taking private property for public uses without paying a just compensation, but I do not think that doctrine applies in this case, as the defendant, or those under whom he holds, have been paid.

The overseer, then, having the right, he was the judge as to how it should be done. *Brodnax v. Groom,* 64 N. C., 190, and many other cases. This Court can not become the overseer of a road, nor can it direct or say how the overseer shall do his work. It can not say it would have been better to cut a ditch on the other side of the road. If there was no necessity for draining the road at this point, and the overseer had gone on the defendant's land to cut the ditch out of bad motives or for any other reason than to drain the road, then I think he would have been a trespasser, and the defendant would not be guilty. But these very questions were submitted *to the jury* by the Judge in his charge, and they must have found that he was not influenced by any other motive than to drain and improve the road. I see no error, and think the judgment should be affirmed.

CLARK, J., concurs in the dissenting opinion.